A10A1661. SCOTT v. THE STATE.
(700 SE2d 694)

BLACKBURN, Senior Appellate Judge.

Following a jury trial, Thomas A. Scott was found guilty of voluntary manslaughter,[1] felony murder,[2] aggravated assault,[3] possession of a firearm during the commission of a crime,[4] and possession of cocaine.[5] The trial court merged the aggravated assault and felony murder charges with the voluntary manslaughter charge, and convicted Scott on that and on the remaining charges. Scott now appeals from the denial of his motion for a new trial, asserting that the trial court erred in allowing argument and evidence as to the conduct of third parties, who allegedly attempted to intimidate two eyewitnesses to prevent them from testifying truthfully at trial. Scott further claims that his trial counsel was ineffective for failing to object to: (1) statements by the prosecutor, during his closing argument, that constituted an improper comment on Scott's constitutional right to remain silent; (2) the eyewitnesses' testimony regarding threats they received from the families and friends of both Scott and his co-defendant; and (3) hearsay testimony regarding a statement one of the eyewitnesses allegedly made to a police detective. Finding that trial counsel was ineffective for failing to object to the State's argument that the jury should view Scott's pre-arrest silence as evidence of his guilt, we reverse.

Viewed in the light most favorable to the verdict, *Brown v. State*,[6] the evidence showed that on June 3, 2004, two men were selling crack cocaine outside of an apartment complex in Columbus. The

---

[1] OCGA § 16-5-2 (a).

[2] OCGA § 16-5-1 (c).

[3] OCGA § 16-5-21 (a).

[4] OCGA § 16-11-106 (b) (1).

[5] OCGA § 16-13-30 (a).

[6] *Brown v. State*, 293 Ga. App. 633, 633 (667 SE2d 899) (2008).

victim approached one of the men and asked to buy some crack, which the man obtained from his partner. The man held out the cocaine to show it to the victim, who grabbed a piece of the crack from the man's hand, put it in his mouth, and began running away. The man's partner then handed him a gun and the man began to chase the victim, firing shots in his direction. Two of the shots hit the victim, resulting in his death.

During their investigation of the incident, police located two eyewitnesses, Ron Blair and Tawanna Ford, each of whom identified Scott from a photographic lineup as the shooter.[7] Arrest warrants were issued for Scott and his co-defendant on June 10, 2004, and police attempted to arrest Scott at that time. They told Scott's mother, his current girlfriend, and his ex-girlfriend that they were attempting to locate Scott, but there was no evidence that this information was ever communicated to Scott. Police arrested Scott in September 2004, when they located him living just over the state line, in Alabama.

In his opening statement, the prosecutor asserted that the alibi witness for Scott's co-defendant, who was also his girlfriend, had been arrested for harassing and intimidating eyewitness Ford. The prosecutor further stated that Ms. Ford was "constantly harassed by individuals related to and befriend[ed] by both defendants." Scott's attorney objected on the grounds that it was improper for the prosecutor to attribute such conduct by third parties to Scott. The trial court did not rule on the objection, but instead instructed the prosecutor to "move on" from the subject, stating, "I'm not in a position to fully understand that part of [the] case." The trial court further noted that it had "told this jury in no uncertain terms that no lawyer's statement is evidence."

At trial, each of the eyewitnesses testified that after they spoke with police, they had received threats of an unspecified nature. Specifically, Mr. Blair stated that he chose to testify at trial despite receiving both physical and verbal threats. In response to a question from defense counsel, Ms. Ford stated that she had been forced to move out of the apartment complex where the incident occurred because the families of both Scott and his co-defendant had come to her residence and threatened her. During her cross-examination, the co-defendant's alibi witness admitted that she had pled guilty to influencing a witness because of her conduct against Ms. Ford. There was no testimony or other evidence to indicate that these threats were done at the behest of or with the knowledge of either Scott or his co-defendant.

---

[7] The evidence showed that Scott was a casual acquaintance of each of the eyewitnesses.

The detective who investigated the incident testified as to his interview with eyewitness Blair. During re-direct examination, the detective read from his notes on that interview and stated that Blair reported to him that he had spoken with Scott after the shooting, and Scott told him that "he [Scott] [screwed] up; he said he tried to shoot the guy in the legs." Defense counsel offered no objection to this testimony, despite the fact that it constituted hearsay and that the State had failed to ask Blair, who had already testified, about this alleged statement.

Scott presented several witnesses in his defense, including the wife of eyewitness Blair. The wife testified that Blair had been at home with her at the time of the shooting and therefore could not have witnessed the same. She further stated that Blair had been threatened or intimidated by police and/or the prosecutor into testifying falsely. Additionally, a local community leader testified that he had been contacted by Blair and his wife about the case and that he had spoken with them on two occasions. Both times, Blair told him that he was being forced to give testimony in a case he "knew nothing about."

When called to testify during Scott's case, Blair acknowledged that he had been told he had to testify or that he would face prosecution himself.[8] Blair further admitted that after he gave his statement to police, he told other people that he was not at the apartment complex in question on the night of the shooting. He explained, however, that this was because he had gone to the apartments to see a woman other than his wife.

Scott's current girlfriend testified that Scott had been with her, at her apartment, at the time of the shooting. A neighbor who went to the girlfriend's home shortly after the shooting testified that she saw Scott there, drinking beer and appearing very relaxed. Scott's current girlfriend, her neighbor, Scott's mother, and his ex-girlfriend all testified that, during the course of the trial, Blair had approached them in the hallway outside the courtroom. Blair told each of the women that he had not witnessed the shooting and that he was being forced to testify against Scott to avoid having charges brought against him.

During closing argument, the prosecutor noted the evidence showing that after the arrest warrant issued in June 2004, police had

---

[8] Blair did not say what crime he would be prosecuted for. Other evidence showed, however, that Blair had been charged in a different jurisdiction with a crime or crimes unrelated to the current case, and that those charges had resulted in Blair being held for a potential probation revocation. Even though Blair was jailed in a different county, the prosecutor in this case had attended Blair's preliminary hearing, although it does not appear that he participated in the same. Blair was released from custody after paying a fine.

notified Scott's family and girlfriend that they were looking for him. Despite this fact, Scott failed to turn himself in. The prosecutor went on to argue that the jury should view this conduct as evidence of Scott's guilt, stating: "He was on the run. The good book sums up that behavior. The wicked man flees though no man pursues where the righteous stand bold as lions. If he [Scott] hadn't done anything, why would he run for three months? Why? Why not go in and give police a statement?" The prosecutor later reiterated his argument that "the wicked man flees but the righteous stand bold as lions." Defense counsel offered no objection to these arguments.

At the motion for new trial hearing, defense counsel testified that he did not object to the eyewitnesses' testimony about the threats they received, because he had not received a ruling on the objection he made on this issue during the prosecutor's opening argument. He further explained that he did not think it was worth arguing in front of the jury "over something that I really didn't think was really that terribly damaging. I didn't think it was something so objectionable that I should have just jumped up and risked . . . getting the jury angry with me."

Trial counsel could offer no explanation for his failure to object to the hearsay testimony of the police detective regarding the statements made to him by eyewitness Blair. He further stated that he offered no objection to the prosecutor's closing argument about Scott's failure to turn himself in because he did not believe that it was objectionable. Specifically, trial counsel explained that he did not see that argument as a comment on his client's pre-arrest silence — i.e., a refusal by his client to give police any kind of statement.

The trial court found no merit in any of the grounds for a new trial asserted by Scott and therefore denied his new trial motion. Scott now appeals from that order.

1. Scott first argues that the trial court erred in refusing to sustain his objection to the prosecutor's statements during opening argument, that friends and relatives of Scott had threatened the two eyewitnesses, and in subsequently admitting testimony concerning those threats.

"[T]he trial court has a sound discretion to control the content of the opening statement of either party, particularly with regard to matters of questionable admissibility. We do not find that the trial court abused its discretion in this case." (Citations omitted.) *Sims v. State*.[9]

---

[9] *Sims v. State*, 251 Ga. 877, 879 (3) (311 SE2d 161) (1984).

Scott correctly asserts

> that an attempt by a third person to influence a witness not to testify or to testify falsely is relevant and may be introduced into evidence in a criminal prosecution on the issue of the defendant's guilt [only] *where it is established that the attempt was made with the authorization of the accused.*

(Punctuation omitted; emphasis supplied.) *Kell v. State.*[10] See also *Johnson v. State*[11] ("evidence of a threat or attempt to influence a witness made by a third party must be linked to the defendant in order to be relevant to any material issues"). The record shows that the prosecutor never even attempted to link any of the alleged threats against the eyewitnesses to Scott. Instead, he merely solicited testimony that the threats were allegedly made by unidentified friends and family of Scott. The mere fact that a relationship — familial or otherwise — exists between a criminal defendant and a person who attempts to intimidate a witness, however, is insufficient to "link" the threats to the defendant. *Kell*, supra, 280 Ga. at 672 (2) (a). Rather, as noted above, the prosecution is required to show that the threat was authorized by the defendant, either implicitly or explicitly. Id. at 671 (2).

Thus, "the [S]tate's inability to link the threat[s] to [Scott] prevented the testimony [regarding the same, and therefore the prosecutor's statements during opening argument,] from being relevant to any material issues." *Fields v. State.*[12] At the time defense counsel objected to the State's opening argument, however, the trial court stated that it did not have enough information to rule on the admissibility of the alleged threats, and defense counsel did not attempt to elaborate on his objection. Specifically, while he had objected on the basis that such evidence was inadmissible unless the State linked the threats to his client, he never argued that the State would be unable to make such a showing. We therefore cannot say that the trial court abused its discretion in declining to sustain the objection, particularly in light of the fact that it told the prosecutor to "move on" and reiterated that the jury had been instructed that statements of counsel were not evidence.

Scott further claims that the trial court erred in admitting the testimony of the eyewitnesses regarding the alleged threats against them. We agree that this evidence was inadmissible, given the State's

---

[10] *Kell v. State*, 280 Ga. 669, 671 (2) (a) (631 SE2d 679) (2006).

[11] *Johnson v. State*, 255 Ga. App. 721, 722 (2) (566 SE2d 440) (2002).

[12] *Fields v. State*, 260 Ga. 331, 333 (4) (393 SE2d 252) (1990).

failure to link the threats to either Scott or his co-defendant. As Scott concedes in his brief, however, trial counsel failed to object to this testimony. Accordingly, this claim of error has been waived. *Evans v. State*[13] ("[f]ailure to object to testimony waives the issue on appeal") (punctuation omitted). See also *Smith v. State*[14] ("[n]o matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal") (punctuation omitted).

2. Scott further claims that he received ineffective assistance of counsel, based upon trial counsel's failure to object to: (a) the prosecutor's argument, during his closing, that the jury should view Scott's pre-arrest silence as evidence of his guilt; (b) the eyewitnesses' testimony regarding threats they received from the families and friends of both Scott and his co-defendant; and (c) hearsay testimony regarding the statement that eyewitness Blair allegedly made to the police detective.

> To prevail on a claim of ineffective assistance of trial counsel, a defendant bears the burden of showing both that trial counsel was deficient and that he was prejudiced by the deficiency. The trial court's factual findings with respect to effective assistance of counsel will be affirmed unless clearly erroneous, but we review the trial court's legal conclusions de novo.

(Citation and punctuation omitted.) *Gibbs v. State*.[15]

(a) As noted above, during his closing argument the prosecutor asserted that Scott's failure to turn himself in and speak with police after the arrest warrant issued was evidence of his guilt. For the reasons explained below, we find that trial counsel's failure to object to this argument constituted ineffective assistance.

> To demonstrate deficient representation, a convicted criminal defendant must show that counsel's representation fell below an objective standard of reasonableness. Such a defendant must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct and that counsel's decisions were made in the exercise of reasonable professional judgment. The reasonableness of counsel's conduct is examined from

---

[13] *Evans v. State*, 288 Ga. App. 103, 107 (2) (653 SE2d 520) (2007).
[14] *Smith v. State*, 302 Ga. App. 128, 132 (1) (b) (690 SE2d 449) (2010).
[15] *Gibbs v. State*, 287 Ga. App. 694, 696 (1) (652 SE2d 591) (2007).

counsel's perspective at the time of trial and under the circumstances of the case.

(Punctuation omitted.) *Greene v. State*.[16]

Scott's trial counsel testified at the motion for new trial hearing that he did not object to the prosecutor's argument because he did not view it as objectionable — i.e., he did not view it as a violation of Scott's right to remain silent. "In 1991, however, our Supreme Court held that the State may not comment at trial upon a defendant's silence or failure to come forward, even when the defendant testifies on his own behalf [because such comments would be] far more prejudicial than probative." (Citation and punctuation omitted.) *Johnson v. State*,[17] citing *Mallory v. State*.[18] The Supreme Court of Georgia recently reiterated the rule that the State is strictly prohibited from commenting upon a defendant's silence, because "in the situation of a criminal defendant, this failure to speak or act will most often be judged as evidence of the admission of criminal responsibility." *Reynolds v. State*.[19] See also *Grissom v. State*[20] ("[i]t is fundamentally unfair to simultaneously afford a suspect a constitutional right to silence . . . and yet allow the implications of that silence to be used against him for either substantive or impeachment purposes") (punctuation omitted).

Here, trial counsel's testimony established that his "failure to object to these improper [arguments] arose not from strategy, but from his mistaken belief that they were not objectionable. We must conclude, therefore, that counsel's performance was deficient, leaving us to consider whether the deficiency prejudiced [Scott's] defense." *Johnson*, supra, 293 Ga. App. at 730 (2) (a). See also *Arellano v. State*[21] (where trial counsel "confirmed that her failure to [object to questions regarding defendant's silence] did not arise from a strategic[ ] decision[,] [i]t follow[ed] that [her] performance in this regard was deficient"); *Hines v. State*[22] (counsel's failure to object to improper comment on defendant's decision to remain silent constituted deficient performance).

In the context of an ineffective assistance claim, "prejudice is shown by demonstrating that a reasonable probability exists that the outcome of the case would have been different but for the deficient

---

[16] *Greene v. State*, 295 Ga. App. 803, 805 (673 SE2d 292) (2009).

[17] *Johnson v. State*, 293 Ga. App. 728, 730 (2) (a) (667 SE2d 637) (2008).

[18] *Mallory v. State,* 261 Ga. 625, 630 (5) (409 SE2d 839) (1991), overruled on other grounds, *Clark v. State*, 271 Ga. 6, 9-10 (5) (515 SE2d 155) (1999).

[19] *Reynolds v. State*, 285 Ga. 70, 71 (673 SE2d 854) (2009).

[20] *Grissom v. State*, 300 Ga. App. 593, 595 (685 SE2d 492) (2009).

[21] *Arellano v. State*, 304 Ga. App. 838, 841 (698 SE2d 362) (2010).

[22] *Hines v. State,* 277 Ga. App. 404, 407-408 (2) (626 SE2d 601) (2006).

performance of counsel." (Punctuation omitted.) *Gibbs*, supra, 287 Ga. App. at 698 (1) (a) (ii). Scott's "burden [here] is to show only a reasonable probability of a different outcome, not that a different outcome would have been certain or even more likely than not." (Punctuation omitted.) *Bass v. State*.[23] See also *Miller v. State*[24] ("[t]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt") (punctuation omitted).

When determining whether the State's unchallenged comments or questions about a defendant's right to remain silent have prejudiced that defendant, we consider a number of factors. These include whether the error was an isolated incident, or instead consisted of several questions or comments, and whether the error was inadvertent, rather than a deliberate attempt by the State to use the defendant's silence against him. See *Maynard v. State*[25] (defendant prejudiced where "the prosecutor deliberately and repeatedly placed [his] silence before the jury"); *Gordon v. State*[26] (defendant prejudiced where "[t]he prosecutor repeatedly stressed [the defendant's] failure to explain the events leading up to his arrest"). Compare *Mayberry v. State*[27] (no prejudice where State's passing reference to defendant's silence during direct examination of a witness was "incidental at best"). We also examine the "trial context" of the error, id. at 510 (4) (d) (punctuation omitted), and take a particularly dim view of the State's conduct in arguing during closing that evidence of the defendant's silence should be viewed as evidence of his guilt. See, e.g., *Reynolds v. State*;[28] *Grissom*, supra, 300 Ga. App. at 595; *Maynard*, supra, 282 Ga. App. at 602 (2); *Gordon*, supra, 250 Ga. App. at 83. Finally, we analyze whether, in light of the evidence presented, there was a possibility that the State's improper comments contributed to the guilty verdict. See *Johnson*, supra, 293 Ga. App. at 731 (2) (a). In other words, we examine whether the evidence of the defendant's guilt was overwhelming or whether the evidence was conflicting. See *Mayberry*, supra, 301 Ga. App. at 510 (4) (d); *Reynolds*, supra, 300 Ga. App. at 354 (2).

Applying these factors to the circumstances of the current case, we find that Scott suffered prejudice as a result of counsel's error. The State's violation of Scott's constitutional right to remain silent was neither incidental nor inadvertent. Rather, twice during closing

[23] *Bass v. State*, 285 Ga. 89, 93 (674 SE2d 255) (2009).

[24] *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009).

[25] *Maynard v. State*, 282 Ga. App. 598, 602 (2) (639 SE2d 389) (2006).

[26] *Gordon v. State*, 250 Ga. App. 80, 83 (550 SE2d 131) (2001).

[27] *Mayberry v. State*, 301 Ga. App. 503, 510-511 (4) (d) (687 SE2d 893) (2009).

[28] *Reynolds v. State*, 300 Ga. App. 353, 353-354 (2) (685 SE2d 346) (2009).

the State deliberately and unequivocally argued that the jury should use Scott's silence against him and view his failure to come forward and speak with police as evidence of his guilt. Notably, the prosecutor made this argument despite the absence of any evidence showing that Scott was aware that a warrant had issued for his arrest. Moreover, the evidence against Scott was not overwhelming. There was no physical evidence linking him to the crimes, and the State's case rested almost entirely on the testimony of the two eyewitnesses. Their testimony, however, was not uncontroverted, as both Scott and his co-defendant presented alibi witnesses. And the testimony of eyewitness Blair was impeached extensively.

"Although jurors ultimately chose to believe the [eyewitness testimony], there is a reasonable probability that an improper inference of guilt, raised by [Scott's] failure to come forward, influenced this decision." *Johnson*, supra, 293 Ga. App. at 731 (2) (a). See *Reynolds*, supra, 300 Ga. App. at 354 (2) (given conflicting evidence, which included victim's eyewitness testimony, prosecutor's closing argument regarding defendant's failure to come forward and speak with police prejudiced him); *Maynard*, supra, 282 Ga. App. at 601-602 (2) (comment on defendant's silence harmful, given evidence presented); *Gibbs v. State*[29] (comment on defendant's silence harmful because evidence, which included victim's identification testimony, was not overwhelming).

(b) In light of our holding in Division 2 (a), we need not address Scott's remaining claims of ineffective assistance.

*Judgment reversed. Barnes, P. J., and Senior Appellate Judge Marion T. Pope, Jr., concur.*

DECIDED AUGUST 27, 2010.

*James D. Lamb*, for appellant.
*Julia F. Slater, District Attorney, LaRae D. Moore, Assistant District Attorney*, for appellee.

---

[29] *Gibbs v. State*, 217 Ga. App. 614, 616 (458 SE2d 407) (1995).