**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**October 19, 2012**

# In the Court of Appeals of Georgia

A12A1502. THE STATE v. MOORE.

McFADDEN, Judge.

A jury convicted Lawrence Benjamin Moore, Jr. of the rape of J. S. But the trial court granted a new trial, finding that Moore had been denied the effective assistance of counsel. The state had improperly commented on Moore's pre-arrest silence, but defense counsel had failed to object. The state appeals. The state contends, notwithstanding that Moore later voluntarily turned himself in, that its improper comments referred to flight, not pre-arrest silence and that trial counsel was therefore not ineffective for failing to object. And notwithstanding that the physical evidence was equally consistent with rape and with consensual sex and that the testimonial evidence was in conflict, the state further contends that the evidence of guilt is overwhelming and that any deficiencies in trial counsel's performance were therefore

harmless. We are not persuaded. We agree with the trial court that counsel's performance was deficient and that there is reasonable probability that, but for counsel's error, the outcome of the trial would have been different. We therefore affirm the grant of Moore's motion for new trial.

To prevail on his claim of ineffective assistance of counsel, Moore was required to show both deficient performance by trial counsel and actual prejudice. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985).

> When determining deficient performance, we address not what is prudent or appropriate, but only what is constitutionally compelled. The appropriate test for whether [Moore's] counsel was deficient is whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Perfection is not required; an ineffectiveness analysis is simply intended to ensure that the adversarial process at trial worked adequately.

(Citations and punctuation omitted.) *Head v. Carr*, 273 Ga. 613, 625 (4) (C) (3) (544 SE2d 409) (2001). As to the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, supra,

2

466 U. S. at 694 (III) (B). In other words, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695 (III) (B). "A claim of ineffective assistance of counsel is a mixed question of law and fact. The proper standard of review requires that we accept the [trial] court's factual findings unless clearly erroneous, but we independently apply the legal principles to the facts." (Citations omitted.) *Head v. Carr*, 273 Ga. at 616 (4). We set out the evidence with these principles in mind.

1.      *Facts and proceedings below.*

Moore was a neighbor and friend of T. R.'s and would spend time with her at her house. J. S., whom Moore was convicted of raping, was temporarily living at T. R.'s house. On the evening in question, Moore and J. S. were at the house while T. R. had gone to pick up her boyfriend. Once T. R. returned to the house with her boyfriend, she, her boyfriend, J. S. and Moore went outside to socialize. Eventually J. S. went inside to go to sleep on the couch in the den.

Some time later, T. R., her boyfriend and Moore returned inside. T. R. and her boyfriend went upstairs while Moore stayed in the den, the same room in which J. S. was lying on the couch. At some point, Moore began having intercourse with J. S.

3

J. S. told Moore she had to use the bathroom and then ran to T. R.'s bedroom, where T. R. and her boyfriend were getting ready for bed, and told them that Moore had raped her. J. S. was hysterical: she was crying and shaking, and she vomited. T. R. or her boyfriend called the police and then confronted Moore, who left the house.

J. S. testified that she was sleeping and awoke to find Moore having intercourse with her without her consent. Moore testified that he and J. S. had had a consensual sexual relationship, and they had consensual sex on the night in question.

The nurse who conducted a rape examination of J. S. testified that J. S. was visibly upset. The nurse found no visible signs of trauma. This was, of course, equally consistent with J. S. having been asleep at the time of the intercourse or with the intercourse having been consensual.

The testimony at issue was primarily that of Detective Ben Ervin. Detective Ervin testified that on the morning of the incident, he telephoned Moore and informed him

> that I was a detective with the Gwinnett County Police and that I was
> investigating a rape and that he was named as the suspect and I needed
> to speak with him about it. And he said that he could not speak with me
> at this time. He said that he was on his way to Augusta, South Carolina.

4

I told him that: You understand that you're a suspect in a rape, a felony, and you're telling me now that, instead of talking to me, you're going to go to South Carolina? He said: I can't talk to you right now. I would love to talk to you later, but I can't do it right now. He said that he would be back later – in town later that week.

. . .

I didn't call him back. I told him that if he didn't come -- if he didn't come speak with me, I only had one option, which was to take a warrant out for his arrest. He said that if I took a warrant for his arrest, he wasn't going to talk to me anyway.

Moore testified, and defense counsel asked him about the detective's testimony. Moore explained that he did not go to the police department to speak with the detective because he was planning to go to Augusta, Georgia to confront his son, who said he was dropping out of college. On cross-examination, the prosecutor asked Moore to concede that at the time of trial, he knew what the state's evidence was, but when he spoke with the detective, he did not. The prosecutor asked Moore, "Not one time in that phone conversation with . . . Detective Ervin did you tell him you had consensual sex with her, did you?" Moore responded, "No, sir; and not one time did he ever ask me."

In closing argument, the prosecutor told the jury:

5

But he had the opportunity to speak to a detective, to give his side. You met with Detective Ervin. He told you that after he met with [J. S.] at the [medical facility], he took her testimony, interviewed her, took custody of the rape kit, sent everything off. And then what did he do? He called the defendant. He said: I'm investigating a lead on a rape. I want to meet with you. Let's talk. Tell me your story. I'm listening.

What does he say? What does the defendant say? I'm on my way to Augusta. He's on his way to Augusta. He's confronted with the fact the he is being a suspect in a rape case, and he's on his way to Augusta.

Do you want to know why he didn't talk to officers that day? It's because he didn't know what to tell officers. He didn't know the [s]tate's evidence. He didn't know what we had against him. He couldn't give them a story. But instead, he waits until this week, after he's read all of the reports, watched all the witnesses walk in through this courtroom and sit there in that seat and tell them what you know, and then what he's done is he's fabricated this story to fit.

He couldn't talk to Detective Ervin. He didn't know what to say. You're faced with rape charges, you're a suspect in a rape, and you leave, not only the county, but the state.

At the motion for new trial hearing, defense counsel testified that he did not know that under Georgia law (as detailed below), the state may not comment on a defendant's pre-arrest silence. Counsel testified that allowing the jury to hear that

6

Moore refused to talk with Ervin was not part of his trial strategy and hurt Moore's credibility. He explained that he questioned Moore on the issue only to minimize the effect of Ervin's testimony; if the state had not asked Ervin the questions, then defense counsel never would have gone into Moore's pre-arrest silence.

2. *Failure to object to improper comment on pre-arrest silence.*

The trial court found that the state intentionally elicited improper testimony and improperly commented on Moore's pre-arrest silence in violation of *Mallory*, and that trial counsel's failure to object was deficient. We agree.

Our Supreme Court has drawn a bright-line rule prohibiting comments upon a defendant's pre-arrest silence or failure to come forward. While recognizing that the Supreme Court of the United States had reached a different conclusion as to the applicable federal Constitutional law, our Supreme Court nevertheless held, as a matter of Georgia law, that "in criminal cases, a comment upon a defendant's silence or failure to come forward is far more prejudicial than probative. Accordingly, ... such a comment will not be allowed even where the defendant has not received Miranda warnings and takes the stand in his own defense." *Mallory v. State*, 261 Ga. 625 (5), 630, 409 S.E.2d 839, 843 (1991), recognized as overruled on other grounds in *Clark v. State*, 271 Ga. 6(5), 515 S.E.2d 155 (1999). Our Supreme Court recently reaffirmed

7

its adherence to *Mallory* and overturned a line of cases that had "attempt[ed] to distinguish and limit Mallory on its facts," holding that the "factual differences [on which those cases had turned] fail to provide support for the eroding of this Court's determination of the potential for prejudice stemming from the State's comment on a defendant's pre-arrest silence." *Reynolds v. State*, 285 Ga. 70, 71-72, 673 S.E.2d 854, 855 (2009).

Defense counsel's failure to object to such comments amounts to deficient performance. See, e.g., *Thomas v. State*, 284 Ga. 647, 649 (3) (a) (670 SE2d 421) (2008); *Lampley v. State*, 284 Ga. 37, 38-39 (2) (b) (663 SE2d 184) (2008)*; Scott v. State*, 305 Ga. App. 710, 716 (2) (a) (700 SE2d 694) (2010); *Reynolds v. State*, 300 Ga. App. 353-354 (2) (685 SE2d 346) (2009). "[T]rial counsel's testimony established that his failure to object to these improper arguments [and testimony] arose not from strategy, but from his mistaken belief that they were not objectionable. We must conclude, therefore, that counsel's performance was deficient, leaving us to consider whether the deficiency prejudiced [Moore's] defense." (Citations and punctuation omitted.) *Scott*, 305 Ga. App. at 716 (2) (a).

The state argues that the testimony and closing argument at issue were not comments on Moore's pre-arrest silence but instead were permissible comments on

8

Moore's flight. Ervin testified that he told Moore that he "needed to speak with him about it. And he said that he could not speak with me at this time." On cross-examination, the prosecutor asked Moore to acknowledge that he never told Ervin the intercourse was consensual. In the closing argument, the prosecutor told the jury that Moore "didn't talk to officers that day . . . because he didn't know what to tell officers" and that Moore "couldn't talk to Detective Ervin. He didn't know what to say." Even if there is some merit to the argument that Moore – who later turned himself in voluntarily – was fleeing from justice, these are impermissible comments. See *Pearson v. State*, 277 Ga. 813, 817 (5) (c) (596 SE2d 582) (2004) (holding that although portions of prosecutor's closing argument were permissible comments on defendant's flight, other portions were impermissible comments on his pre-arrest silence and failure to come forward).

3. *Probability that the outcome of the trial could have been different.*

The state argues that the evidence of Moore's guilt is overwhelming and that consequently there is no reasonable probability that the outcome of the trial would have been different even if trial counsel was ineffective. We do not agree.

The outcome of the trial depended on whether or not the jury found the intercourse to be consensual. There were no eyewitnesses and no physical evidence

9

indicating the use of force. Although the state reinforced J. S.'s testimony that she had not consented to intercourse with testimony from outcry witnesses, the jury's determination of the credibility of Moore and J. S. was critical to its verdict. The trial court concluded that the state's comments on Moore's pre-arrest silence impacted his credibility, making it reasonably probable that the outcome of the trial would have been different had defense counsel objected.

We consider a number of factors when considering whether the state's unchallenged comments or questions about a defendant's right to remain silent have prejudiced that defendant, including

> whether the error was an isolated incident, or instead consisted of several questions or comments, and whether the error was inadvertent, rather than a deliberate attempt by the [s]tate to use the defendant's silence against him. We also examine the "trial context" of the error, and take a particularly dim view of the [s]tate's conduct in arguing during closing that evidence of the defendant's silence should be viewed as evidence of his guilt. Finally, we analyze whether, in light of the evidence presented, there was a possibility that the [s]tate's improper comments contributed to the guilty verdict. In other words, we examine whether the evidence of the defendant's guilt was overwhelming or whether the evidence was conflicting.

(Citations omitted.) *Scott*, supra, 305 Ga. App. at 717 (2) (a).

10

Applying these factors, we conclude that the error was not isolated. The error occurred in the direct examination of Ervin -- which led defense counsel to elicit testimony from Moore in an effort to minimize the effect of Ervin's testimony -- and in the state's cross-examination of Moore. The error also occurred in the state's closing argument, where the state implied that Moore refused to speak with Ervin because he needed time to fabricate a story to cover his guilt. Further, we agree with the trial court that the evidence of Moore's guilt was not overwhelming. For these reasons, we conclude that the trial court correctly determined there is a reasonable probability that trial counsel's deficient performance affected the outcome of the trial.

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*