**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 15, 2013**

# In the Court of Appeals of Georgia

A13A1187. SHABUROV v. THE STATE.

MCMILLIAN, Judge.

Sergey Shaburov appeals the denial of his motion for new trial after a jury convicted him of one count of criminal attempt to commit murder, two counts of aggravated assault, one count of aggravated battery, two counts of arson in the first degree, and one count of burglary. As his sole argument on appeal, Shaburov asserts that he received ineffective assistance of counsel when his attorney failed to object and/or move for a mistrial when both the prosecuting attorney and a witness for the State improperly commented on Shaburov's failure to come forward to law enforcement.

"Following a criminal conviction, the defendant is no longer presumed innocent, and we construe the evidence in the light most favorable to the jury's

verdict." (Citation omitted.) *Boggs v. State*, 304 Ga. App. 698, 698 (1) (697 SE2d 843) (2010). So viewed, the evidence showed that Shaburov was staying with his friend, Vladimir Schennikov, when the two got into a dispute over Shaburov's behavior with Schennikov's niece, who also was staying at Schennikov's house. Schennikov subsequently asked both Shaburov and his niece to move out of his house.

Sometime later, Shaburov returned to Schennikov's house saying that he was there to kill Schennikov. Shaburov apparently believed Schennikov had told Shaburov's girlfriend that he was having an affair with the niece. Shaburov began hitting Schennikov, and the two ended up in Schennikov's bedroom where Shaburov poured a liquid on the bed and set it on fire, telling Schennikov that he was going to burn him in his bed and nobody would know. Schennikov was able to get the fire under control, but Shaburov reignited it. Shaburov again began hitting Schennikov in the face and ribs, and at some point, Schennikov grabbed a BB gun and began to shoot. Shaburov took the gun from Schennikov and emptied it into the left side of Schennikov's head and face. Shaburov began beating Schennikov again, while the bed continued to burn and smoke filled the room. Although Schennikov cannot remember how, he eventually was able to get out of his house, where he fell to the

2

ground unconscious. Most of Schennikov's bedroom was consumed by fire. Schennikov was transported to the hospital where he was diagnosed with multiple rib fractures, bruises to his lung, and multiple facial fractures, including a fractured eye socket, broken sinuses, and a broken nasal septum.

Shaburov did not testify at trial, but he gave a statement to the police, which was played for the jury. Although Shaburov admitted having an altercation with Schennikov, he told police that Schennikov was the aggressor and that he struck Schennikov in self-defense[1] when Schennikov pulled a knife. He also said that Schenikov put a grill lighter in his face and the two struggled over it. Shaburov said that the fire started accidentally during the struggle when he forced Schennikov's hand down on the bed. After the struggle, Shaburov just left Schennikov in the house.

On appeal, Shaburov contends that he is entitled to a new trial because his trial counsel failed to object when the prosecuting attorney and a State witness improperly commented on his failure to come forward to law enforcement during their investigation. He asserts these instances represented improper commentary on his

---

[1]Shaburov said in his interview that he used to be a boxer and a wrestler, and while the police investigator's "hit is like a 100 pounds, [Shaburov's] hit is 600 pounds."

right to remain silent and a violation of the "bright line rule"[2] set out in *Mallory v. State*, 261 Ga. 625 (409 SE2d 839) (1991).[3] Shaburov argues that his counsel was ineffective in failing to object or to move for a mistrial.

In opening statement, the prosecutor told the jury that "[t]he investigators that you will hear from in this case immediately obtained the name of Sergey Shaburov, and they went looking for him, and they went to the house of his fiancee and left a message for him to contact them. He never did[.]" Later, during DeKalb County Fire Investigator William Walker's testimony regarding his investigation into the fire, the prosecutor asked Walker the following series of questions:

---

[2] In *Mallory*, the Supreme Court announced:

> We take this opportunity to hold that in criminal cases, a comment upon a defendant's silence or failure to come forward is far more prejudicial than probative. Accordingly, from the date of publication of this opinion . . . such a comment will not be allowed even where the defendant has not received Miranda warnings and where he takes the stand in his own defense.

261 Ga. at 630 (5).

[3] *Mallory* was implicitly overruled on other grounds in *Chapel v. State*, 270 Ga. 151, 155 (4) (510 SE2d 802) (1998). See *Clark v. State*, 271 Ga. 6, 9-10 (5) (515 SE2d 155) (1999) (recognizing overruling of *Mallory*).

Q: At some point during the police investigation, did you obtain the name of Sergey Shaburov?

A: Yes, I did.

Q: Okay. And what did you proceed to do next?

A: I tried to find out his location. When I obtained that information, I tried to locate that individual, went to the location where he was believed to be.

Q: Okay. Do you remember what day you went to the location?

A: It was probably within a week, probably three to four days later.

Q: Okay. And did you speak with someone when you went to that location?

A: I did.

Q: Okay. And did you give your information that you were looking for Sergey Shaburov?

A: I did.

Q: **And did Mr. Shaburov ever contact you?**

5

A: **No, he did not contact me.** (Emphasis supplied.)

Shaburov's counsel raised no objection to either the prosecutor's opening statement or the testimony. At the hearing on Shaburov's motion for new trial, the attorney stated that she had no recollection of "making any conscious decision whether or not to object during opening [statement]." She said that the argument and testimony could be considered "comments on . . . whether or not [Shaburov] was coming forward" but she thought that such testimony "could be" admissible evidence at trial. In any event, she stated "[t]here was no strategic reason whether or not to object."

"A claim of ineffective assistance of counsel is a mixed question of law and fact. The proper standard of review requires that we accept the trial court's factual findings unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *State v. Crapp,* 317 Ga. App. 744, 745 (2) (732 SE2d 806) (2012). And in considering Shaburov's arguments, we apply

> [t]he two-prong test for determining the validity of a claim of ineffective assistance of counsel provided in *Strickland v. Washington,* 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984), [which] asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability

6

that the outcome of the proceedings would have been different, but for counsel's deficiency.

(Punctuation omitted.) *Bruce v. State,* 252 Ga. App. 494, 498 (2) (555 SE2d 819) (2001). "There is a strong presumption that counsel's conduct falls within the range of sound trial strategy and reasonable professional judgment. [*Strickland,* 466 U.S. at 689]." *Newkirk v. State,* 290 Ga. 581, 582 (2) (722 SE2d 760) (2012).

> [A]nd the defendant bears the burden of overcoming this presumption. To carry that burden, the defendant must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not, or put another way, that his lawyer made errors so serious that he was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.

(Citations and punctuation omitted.) *State v. Worsley,* 293 Ga. 315, 323 (3) (745 SE2d 617) (2013). Moreover, "[t]he likelihood of a different result must be substantial, not just conceivable." (Citation omitted). *Hill v. State,* 291 Ga. 160, 164 (4) (728 SE2d 225) (2012).

The trial court found that Shaburov received "amply effective assistance of counsel" under the *Strickland* standard. The court also found that Shaburov failed to carry his burden under *Strickland* of showing that his counsel's performance was

7

deficient or that his defense was prejudiced, noting that "[his attorney's] performance was eminently reasonable under the circumstances confronting her both before and during trial."

1. With regard to the argument on appeal, the trial court specifically found that neither the prosecutor's argument nor Walker's testimony constituted improper commentary on Shaburov's right to remain silent because

> [i]n neither instance was there evidence or claim that Shaburov in fact *received* the message left with a *third party* for him to contact the police, so as to raise the inference that Shaburov was exercising a "right to remain silent" by not contacting the police. Moreover, the evidence showed that as soon as he was contacted by the police, Shaburov chose to give a lengthy statement, thereby clearly demonstrating that, when, *in fact*, given the choice, Shaburov did *not* exercise a "right to remain silent." In light of these facts, no fair inference can be raised that the prosecutor's complained-of opening comments or the fire investigator's testimony was an improper comment on Shaburov's "right to remain silent."

 (Emphasis in original.) Accordingly, by implication, the trial court found that Shaburov's counsel was not deficient in failing to object or move for a mistrial on this ground. We agree.

8

As the trial court stated, the prosecutor neither contended nor presented evidence that Shaburov ever received the message Walker left asking Shaburov to contact police. Moreover, immediately after the complained-of portion of opening statement, the prosecutor told the jury that approximately two weeks later, after Shaburov was arrested, the police were able to interview him and "he gave his side of the story, and that side of the story you will have the opportunity to listen to." Similarly, after the quoted portion of Walker's testimony, Walker testified that he, in fact, interviewed Shaburov, after reading him his rights, and Shaburov gave a statement, a portion of which was then played for the jury. Accordingly, as the trial court found, no evidence exists that Shaburov ever exercised his right to remain silent; instead, he chose to talk to the police.

Under these circumstances, Shaburov cannot show any deficiency on the part of his trial attorney in failing to object. "Specifically, since [Shaburov] spoke with police without ever invoking his right to remain silent, the prosecutor's line of questioning [and opening statement] did not constitute impermissible commentary on appellant's right to remain silent." (Citations omitted.) *Gilyard v. State*, 288 Ga. 800, 802 (2) (708 SE2d 329) (2011). See also *Carter v. State*, __ Ga. App. __ (2) (b) (Case No. A13A0943, decided October 4, 2013) (trial counsel not deficient in failing to

9

object to alleged commentary on defendant's failure to mention a certain fact in first interview with police where defendant readily spoke with police after receiving *Miranda* warnings and never invoked right to silence, finding *Mallory* principle does not require exclusion of such testimony); *Fleming v. State*, __ Ga. App. __ (3) (a) (Case No. A13A1203, decided October 2, 2013) (counsel not ineffective in failing to object to testimony about defendant's failure to show for appointment with internal affairs investigator where evidence showed that defendant previously spoke with internal affairs investigator and never invoked right to silence).

Accordingly, we find that Shaburov failed to carry his burden on the first prong of the *Strickland* test.

2. But even if the trial counsel's failure to object somehow could be considered deficient performance, the trial court also found Shaburov failed to carry his burden of showing that but for the opening comments or Walker's testimony, a substantial likelihood existed that the outcome of the trial would have been different, stating,

> This Court sat through the evidence in this case twice.[4] The evidence against Shaburov was overwhelming, inclusive of his admissions to

---

[4] An earlier trial on the same charges ended in a mistrial when one juror refused to continue deliberations. According to the trial court's order, "[t]he second jury returned a verdict of guilty on all counts within three hours of receiving the case."

being present at the victim's home; hitting the victim multiple times; and putting a "flame" to the victim's face, after which the victim's bed began to "smoke" and Shaburov "left." The victim sustained severe injury, including five rib fractures and twenty fractures around his eye, breaking his eye socket and sinuses; he was beaten so badly that at [the] time of trial, he was still suffering from seizures. The victim barely escaped from his burning bedroom and was found sprawled unconscious on his front lawn. Shaburov presented no credible defense to the beating or to the fire.

(Footnote omitted.) The trial court thus concluded "[b]ased upon the above considerations, as well as evidence adduced on motion for new trial including credibility witnesses" that Shaburov failed to carry his burden on the prejudice prong of the *Strickland* test. We agree.

Courts must consider a number of factors "[w]hen determining whether the State's unchallenged comments or questions about a defendant's right to remain silent have prejudiced that defendant." *Scott v. State*, 305 Ga. App. 710, 717 (2) (a) (700 SE2d 694) (2010).

These include whether the error was an isolated incident, or instead consisted of several questions or comments, and whether the error was inadvertent, rather than a deliberate attempt by the State to use the defendant's silence against him. We also examine the "trial context" of the error, and take a particularly dim view of the State's conduct in

11

arguing during closing that evidence of the defendant's silence should be viewed as evidence of his guilt. Finally, we analyze whether, in light of the evidence presented, there was a possibility that the State's improper comments contributed to the guilty verdict. In other words, we examine whether the evidence of the defendant's guilt was overwhelming or whether the evidence was conflicting.

(Citations omitted.) Id.

Here, although the argument and testimony cannot be considered inadvertent, we find no deliberate attempt to use Shaburov's failure to respond to Walker's message against him, because it appears that these statements, when considered in context, "[were made] during a narrative on the part of the authorities of a course of events and apparently [were] not intended to, nor did [they] have the effect of, being probative on the guilt or innocence of the defendant." (Citation omitted.) *Hardy v. State*, 301 Ga. App. 115, 116 (2) (686 SE2d 789) (2009). In each instance, the jury immediately was informed that Shaburov, in fact, did speak with police, and the jurors were able to hear his statement. Because these incidents occurred as part of a narrative of events and were not "directed to a particular statement or defense offered by [Shaburov]," they were not prejudicial. *DeLong v. State*, 310 Ga. App. 518, 526

12

(4) (714 SE2d 98) (2011). See also *Hardy*, 301 Ga. App. at 116 (2). Moreover, we agree with the trial court that evidence of Shaburov's guilt was overwhelming.

Therefore, we find that Shaburov also failed to meet the second prong of the *Strickland* test.

*Judgment affirmed. Andrews, P. J., and Dillard, J., concur.*

`

13