**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 18, 2016**

# In the Court of Appeals of Georgia

A16A0053. DUMAS v. THE STATE.

MCMILLIAN, Judge.

Gregory Dumas appeals the denial of his motion for new trial after a jury convicted him of rape and child molestation. On appeal, he asserts that the trial court erred in denying his claim that he received ineffective assistance of trial counsel. We agree and reverse.

Viewed in the light most favorable to the verdict,[1] the evidence showed that for a four-month period between 1999 and 2000, the victim lived with her mother, sister, and Dumas, who was her mother's boyfriend at the time. On one occasion, when the victim was around seven years old and her mother was at work, the victim woke up with gum in her hair and went to Dumas for help. Dumas cut the gum out of her hair

---

[1] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

and told her to stop crying. He said he would make her feel better and took her into her mother's bedroom where he folded a sheet over her face, pulled down her pants, and put his penis on the outside of her vagina. The victim then felt a sharp pain and told Dumas it hurt, but he kept going. Dumas stopped when the victim's little sister came into the house from outside. When Dumas left the room, the victim went to the bathroom and discovered blood running down her leg. Afterward, on a number of occasions, when the victim's mother was at work and her sister was outside, Dumas touched the victim's vagina with his fingers and his penis.

The victim did not tell her mother about these incidents because she was scared, and Dumas told her not to say anything. However, when the victim was around eight years old, she began cutting herself on her arms and engaged in other self-destructive behaviors. She testified that she did these things because of what had happened to her. At around the same time, the victim's family began noticing changes in her behavior. She started isolating herself, would not play with other kids, and she appeared sad. Her family did not notice that the victim had been cutting herself, however, because she started wearing baggy clothes and long-sleeve shirts.

In 2007, when the victim was seventeen and after she had begun therapy, she told her cousin, grandmother, and mother what had happened, and her mother

2

contacted police.[2] The police obtained a warrant for Dumas at that time, but he was not arrested until 2011 when the outstanding warrant was discovered during a routine license plate check.[3]

On appeal, Dumas asserts that his trial counsel was ineffective in failing to (1) request a curative instruction or a mistrial in response to the State's improper questioning and argument regarding his post-arrest silence; (2) object to the State's closing argument asking the jury to rectify what it argued was a systemic problem with child sexual assault cases; (3) present evidence of the victim's history of sexual and physical abuse by others and in failing to oppose the State's motion in limine to exclude such evidence; and (4) challenge a juror who indicated that he had a bias against presuming Dumas to be innocent because the juror's own daughter had almost been raped.

---

[2] The State presented expert testimony at trial to show that it is more common than not for a victim of childhood sexual abuse to delay reporting the incidents to others.

[3] Although Dumas does not challenge the sufficiency of the evidence on appeal, we find that this and other evidence presented at trial was sufficient to allow the jury to find him guilty of rape and child molestation beyond a reasonable doubt. See OCGA § 16-6-1 (a) (2) (rape of female less than ten years old); OCGA § 16-6-4 (a) (1 ) (child molestation).

"In order to prevail on his claim of ineffective assistance, appellant must show both that counsel's performance was deficient and that the deficiency prejudiced him such that there is a reasonable probability that, but for the deficiency, the outcome of his trial would have been different. *Strickland v. Washington*, 466 U.S. 668 (III) (104 SCt 2052, 80 LE2d 674) (1984)." *Grant v. State*, 295 Ga. 126, 130 (5) (757 SE2d 831) (2014). And "[i]n reviewing a claim of ineffective assistance, we give deference to the trial court's factual findings and credibility determinations unless clearly erroneous, but we review a trial court's legal conclusions de novo." Id.

1. Dumas first asserts that his trial counsel was ineffective in failing to request a curative instruction or mistrial after the prosecutor repeatedly and improperly questioned him on his post-arrest silence and improperly addressed the issue in closing argument.

Dumas testified in his own defense at trial and denied that he had ever inappropriately touched the victim. On appeal, he cites to six occasions during cross-examination when the State asked him whether he had ever before related the version of events to which he testified at trial. On each occasion, his trial counsel objected to the question.

4

The trial court sustained the first objection after the prosecutor asked, "Despite [the fact that he had a chance to review the evidence against him prior to trial], today is the very first time that you have opened your mouth to say anything about what happened?" The trial court then told Dumas that he "[did not] have to answer that question." The prosecutor next asked, "In April of 2011, did you tell the police your version of the facts?" Dumas' attorney again objected, and the trial judge held an off-the-record bench conference to discuss the matter. After the conference, the judge instructed the prosecutor that she could proceed "with those instructions," but the instructions themselves are not in the record.

The prosecutor next asked, "Prior to today, have you made any statements alleging this version of the facts that you gave to the jury?" Dumas' counsel again objected. The trial court overruled the objection and directed Dumas that he could answer. Dumas' attorney also objected on the ground of relevance when the prosecutor repeated her question by asking whether Dumas had told his version of events to anybody, and the trial court again overruled the objection. Dumas testified that he had not really talked to anyone. And when the prosecutor asked Dumas whether he had ever made a statement "to any authorities" regarding his version of

5

the facts, the trial court again overruled counsel's objection and directed Dumas to answer. He replied in the negative

Later, the State asked, "And Mr. Dumas, you're saying that you never took it upon yourself being charged with rape . . . and child molestation, to ever attempt to provide the police with a statement of your version of the facts?" Dumas's counsel objected, noting, "That's not his responsibility, Your Honor. . . . And plus he has – he has rights against that." The trial court sustained the objection, stating, "He has a right to remain silent."

Dumas' trial counsel did not ask for any curative instructions following this exchange, and at the hearing on the motion for new trial, he could not recall why he did not do so. He testified that he generally asks for a curative instruction when he feels like one is warranted, but he did not know why he did not ask for one in this case. However, on cross-examination at the hearing, he acknowledged that the trial court's statement that Dumas had the right to remain silent was what he wanted the jury to know and understand.

Subsequently, in closing argument, after noting that the defense had emphasized that the police never asked Dumas for his version of events when he was arrested, the prosecutor stated, "You're getting picked up on a rape warrant. Scream

it from the mountaintops, I didn't do it. But nothing." Dumas' counsel did not raise any objection to this argument, and at the hearing on the motion for new trial, he could not recall why he did not object.

"Georgia law is abundantly clear that arguments commenting on a defendant's silence are impermissible." (Citations omitted.) *Cheeks v. State*, 325 Ga. App. 367, 368 (750 SE2d 753) (2013). See *Reynolds v. State*, 285 Ga. 70, 71 (673 SE2d 854) (2009); *Mallory v. State*, 261 Ga. 625, 630 (5) (409 SE2d 839) (1991), overruled on other grounds recognized in *Clark v. State*, 271 Ga. 6, 10 (5) (515 SE2d 155) (1999); *Scott v. State*, 305 Ga. App. 710, 716 (2) (a) (700 SE2d 694) (2010); *Johnson v. State*, 293 Ga. App. 728, 730 (667 SE2d 637) (2008). And "[d]efense counsel's failure to object to such comments amounts to deficient performance." *State v. Moore*, 318 Ga. App. 118, 122 (733 SE2d 418) (2012). See also *Thomas v. State*, 284 Ga. 647, 649 (3) (670 SE2d 421) (2008) (where prosecutor's conduct violated rule against commenting on pre-arrest silence, "counsel's performance was deficient to the extent he did not object."); *Lampley v. State*, 284 Ga. 37, 38-39 (2) (b) (663 SE2d 184) (2008) (same).

Here, Dumas' attorney consistently objected to the State's cross-examination questions regarding Dumas' failure to tell the police his version of events, and the

7

trial court sustained some of these objections but overruled others.[4] The trial court sustained counsel's final objection, explaining that Dumas had the right to remain silent. Thus, trial counsel's performance cannot be deemed deficient in failing to ask for a curative instruction after the trial court sustained his last objection. However, when the prosecutor again raised the issue in closing argument, Dumas' counsel failed to object, ask for a curative instruction, or move for a mistrial based on prosecutorial misconduct. Counsel offered no reason for these omissions at the hearing on the motion for new trial. Because no reasonable, strategic reason for trial counsel's failure to object appears in the record, we find that trial counsel's performance was deficient, and the first prong of the *Strickland* test is met. See *Hines v. State*, 277 Ga. App. 404, 408 (2) (626 SE2d 601) (2006) (defense counsel's failure to object to improper comments on defendant's silence constituted deficient performance).

The State argues and the trial court found below that Dumas' counsel opened the door to the prosecutor's comment by stating in closing argument that the police did not even bother asking Dumas for his side of the story when he was arrested. We disagree.

---

[4] Dumas does not assert the overruled objections as error on appeal.

Here, the State first injected the issue of Dumas' silence into the case by repeatedly asking him, over defense objections, why he did not volunteer his denial to police or anyone else. After two of the defense objections were overruled, Dumas on cross-examination, testified that he had not told his story to anyone or to any authority. It was only on re-direct that Dumas testified that the police had never asked for his side of the story. Dumas was entitled to rebut the State's evidence regarding his silence, and thus his attorney's comment upon this rebuttal evidence in his closing argument was within the range of proper argument. See *Mikell v. State*, 286 Ga. 434, 438 (5) (689 SE2d 286) (2010) overruled on other grounds by *Manley v. State*, 287 Ga. 338 (698 SE2d 301) (2010) ("prosecutor's comments in closing argument did not exceed the scope of the invited response"). See generally *Morgan v. State*, 267 Ga. 203, 206 (3) (476 SE2d 747) (1996) (closing "argument must be derived from evidence properly before the fact-finder").

In contrast, the State's comment was not based on evidence properly before the jury; rather, it was an impermissible comment in violation of Dumas' right to silence after the trial court's final ruling on the issue – that the State could not ask whether Dumas had failed to tell his story to the police upon being charged with the crimes. Although we consider this issue to be a close question, under these circumstances,

9

where the State first injected the issue of Dumas' silence into the case and repeatedly raised the issue over defense objections, we find that defense counsel's comment addressing properly admitted rebuttal evidence should not be construed as opening the door to the prosecutor's improper argument. See *Collins v. State*, 289 Ga. 666, 668 (2) (715 SE2d 136) (2011) (defendant did not open door to questions about his silence by testifying that he turned himself in to police when he saw on the news that the victim had been shot). Compare *Doyle v. State*, 291 Ga. 729, 733 (3) (733 SE2d 290) (2012) (defense counsel's question to defendant on direct examination as to why he never told his story before opened the door to the prosecution's questions and argument on the issue); *Fullwood v. State*, 304 Ga. App. 341, 342-43 (3) (696 SE2d 367) (2010) (defendant's direct testimony explaining why he did not talk to police opened the door for prosecution's questions and comments on his silence); *Gaston v. State*, 257 Ga. App. 480, 484 (3) (571 SE2d 477) (2002) (defense opened the door to cross-examination about defendant's silence by asking police officer if he talked to defendant about the charges against him).

Turning now to the second prong of the test, we must consider whether the prosecutor's argument prejudiced the defendant. In Georgia, appellate courts must consider a number of factors "when determining whether the State's unchallenged

comments or questions about a defendant's right to remain silent have prejudiced that defendant." (Citation and punctuation omitted.) *Cheeks*, 325 Ga. App. at 367.

> These include whether the error was an isolated incident, or instead consisted of several questions or comments, and whether the error was inadvertent, rather than a deliberate attempt by the State to use the defendant's silence against him. We also examine the "trial context" of the error, and take a particularly dim view of the State's conduct in arguing during closing that evidence of the defendant's silence should be viewed as evidence of his guilt. Finally, we analyze whether, in light of the evidence presented, there was a possibility that the State's improper comments contributed to the guilty verdict. In other words, we examine whether the evidence of the defendant's guilt was overwhelming or whether the evidence was conflicting.

(Citation omitted.) *Shaburov v. State*, 324 Ga. App. 743, 749 (2) (751 SE2d 540) (2013).

Here, the prosecutor's clear intent was to persuade the jury to weigh Dumas' post-arrest silence against him. She repeatedly questioned Dumas on this issue in cross-examination, even returning to the issue to ask again whether he told his story to police after the trial court had sustained his counsel's objection to a similar question. Then in her closing argument, the prosecutor underscored Dumas' failure to proclaim his innocence to police as proof of his guilt. Thus, under these

11

circumstances, the State's violation of Dumas' constitutional right to remain silent was neither incidental nor inadvertent. See *Scott*, 305 Ga. App. at 717 (2) (a).

Moreover, the State's evidence at trial, although sufficient to support his convictions, was not overwhelming. The victim waited approximately ten years to report the incidents involving Dumas, and there was no physical evidence of the crimes. The primary evidence was the victim's description of events, supported by her family's testimony as to changes in her behavior. Thus, the jury's determination necessitated weighing the credibility of the victim's testimony against Dumas' credibility. Although jurors ultimately chose to believe the victim's testimony, there is a reasonable probability that an improper inference of guilt, raised by Dumas' failure to tell police his side of the story, influenced this decision. See *Scott*, 305 Ga. App. at 718 (2) (a); *Cheeks*, 325 Ga. App. at 370; *Moore*, 318 Ga. App. at 124 (3).

Accordingly, we find that Dumas has also established the second prong of the *Strickland* test, and he is entitled to a new trial.

2. In light of the foregoing, we need not address Dumas' remaining arguments as to his ineffective assistance of counsel claim.

*Judgment reversed. Miller, P. J., and McFadden, J., concur.*