[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10512
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 16, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00186-CR-T-27-EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

IBRAHAN POSADAS-AGUILERA,
a.k.a. Ibraham A. Pasadas,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 16, 2009)

Before TJOFLAT, EDMONDSON and BIRCH, Circuit Judges.

PER CURIAM:

Ibrahan Posadas-Aguilera appeals his conviction and 120-month sentence

for illegal reentry after conviction of a felony, in violation of 8 U.S.C. § 1326(a), (b)(2). He contends that the district court violated his Fifth and Sixth Amendment rights by permitting him to proceed pro se at trial and at sentencing and that the court's sentence was both procedurally and substantively unreasonable. Based on our review of the record, we AFFIRM his conviction and sentence.

## I. BACKGROUND

On 23 May 2007, a grand jury indicted Posadas-Aguilera, a citizen of Honduras, for illegal reentry after conviction of a felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). See R1-9. Posadas-Aguilera plead not guilty at his arraignment. See R5 at 4. On 8 June 2007, Posadas-Aguilera's court-appointed counsel, Andrea Stubbs, expressed concern about Posadas-Aguilera's mental stability and indicated to the district court that a mental evaluation would be performed.[1] See R6 at 2. On 1 August 2007, Stubbs informed the court that she was having "significant trouble communicating" with Posadas-Aguilera. R8 at 4. On 3 August 2007, Stubbs filed a motion requesting that the court order a competency evaluation followed by a hearing to determine Posadas-Aguilera's competency. The district court granted Stubbs's motion. See R1-25.

Dr. Michael Maher conducted Posadas-Aguilera's competency examination.

---

[1] Alec Hall stood in for Stubbs during the 8 July 2007 status conference. See R6.

2

Maher concluded that Posadas-Aguilera was not suffering from any major medical or psychiatric disorder and was competent to proceed with the pending federal criminal charges. However, Maher also found that Posadas-Aguilera had an extremely strong and somewhat rigid religious belief system, which might affect his ability to address his current legal situation pragmatically.

On 5 September 2007, a magistrate judge conducted Posadas-Aguilera's competency hearing. The magistrate judge began the hearing by admitting Maher's report and finding Posadas-Aguilera competent. See R10 at 3. After inquiring about Stubbs's basis for seeking a competency evaluation, the magistrate judge then questioned Posadas-Aguilera about whether he wanted to be his own attorney to which Posadas-Aguilera responded, "Yes, God is with me." Id. at 4-7. When asked if he had read the competency evaluation and understood the finding that he was legally competent, Posadas-Aguilera responded that he had read the evaluation and he understood it. Id. at 7-8.

The magistrate judge then entered into a colloquy with Posadas-Aguilera after placing him under oath. See R10 at 8-23. After Posadas-Aguilera failed to answer directly the majority of the magistrate judge's questions, she found that Posadas-Aguilera had not knowingly, intelligently, and voluntarily waived his right to counsel. See id. at 21. The magistrate judge stated that

3

> [i]t is neither the Defendant's lack of education nor his general unfamiliarity with the rules of evidence and the rules of court procedure which concern me. I think it is rather his total belief, and he is entitled to his belief, but his total inability to recognize the consequences of what it means to be held accountable in a court of law and the decision whether to go to trial or plead guilty or not.

Id.

On 10 September 2007, the district court conducted Posadas-Aguilera's Faretta[2] hearing. See R12. Upon questioning, Posadas-Aguilera responded that he understood his right to be represented by an attorney. See id. at 5. Posadas-Aguilera indicated that he was dissatisfied with his attorneys because "they only speak lies . . . they always come to talk with me as judges and not as attorneys." Id. He then said that he wished to represent himself. See id. at 6. After some initial prevarication, Posadas-Aguilera stated that he understood that neither the court nor the prosecutor could help him with his case. See id. at 6-7.

Posadas-Aguilera indicated that he understood the charge against him, which he described as "they're judging me because they are saying that I am illegal." Id. at 7. The district court then twice cautioned Posadas-Aguilera that he would be at a disadvantage in representing himself. See id. at 8. On both occasions, Posadas-

---

[2] Faretta v. California, 422 U.S. 806, 807, 95 S. Ct. 2525, 2527 (1975) (finding a "constitutional right to proceed without counsel when" a criminal defendant "voluntarily and intelligently elects to do so").

4

Aguilera indicated that he understood. See id. The district court then asked

Posadas-Aguilera a few questions concerning rules of procedure, whether he

wished to have a different attorney and whether he had studied the law and

procedures relating to his case. After receiving several nonsensical responses[3], the

district court stated "it is your right to answer the questions or not, Senor. But if

you do not answer my questions, you're not helping your case." Id. at 9. Posadas-

Aguilera stated that he understood. Id.

　　During the course of the colloquy, Posadas-Aguilera also acknowledged that

he understood that if he went to trial, he would be judged by a jury of twelve

people. See id. at 10. He also said that his attorney had explained the charge to

him. See id. The court then asked Posadas-Aguilera whether he had any

objection to the court making his attorney available if he had any questions about

the law or procedure during the trial. Posadas-Aguilera voiced an objection and

indicated that he did not want his attorney on stand-by. See id. at 10-11. The court

then made the following findings and observations:

> Well, it is apparent to me and I so find that this
> defendant understands the charges against him,
> understands this case is scheduled for jury trial. He has
> not articulated an objective or subjective reason for his

---

[3] For example, when asked if he understood that he would be required to follow the rules of procedure, Posadas-Aguilera replied, "You know the law. I know God's law. And if the law were from God to man, a man should not break God's law." Id. at 8.

dissatisfaction with the public defender's office. His answers have been . . . somewhat evasive in that regard, for whatever reason, but most importantly he has not expressed a particularized reason for his dissatisfaction.

He has a limited education. He speaks some English. He has the assistance of a certified interpreter. This is not a complicated matter. He understands he will be at a disadvantage in representing himself.

He has rejected my offer to appoint substitute counsel. He has, likewise, rejected my offer to have Ms. Guzman act as stand-by counsel.

He indicates to me that he understands the law; although, his understanding of the law may be limited. He relies on his own understanding.

I can't force him to – or require him, that is, to respond to my questions in an appropriate manner. Under the circumstances, although he has responded to my questions and demonstrated in a [polite] and respectful manner his decision to represent himself, he cannot, through his lack of cooperation with counsel or silence with respect to his conversations with counsel thwart the law as to appointment of counsel.

I will, accordingly, find that this defendant has made a knowing and voluntary waiver of his right to be represented by counsel at trial and he has demonstrated his right and ability to represent himself under Faretta.

Id. at 12-13.

Upon further questioning, Posadas-Aguilera confirmed that he understood that: (1) the burden of proof was on the government; (2) a jury would decide his

guilt or innocence; (3) witnesses could be called; (4) he would have an opportunity to present a defense; (5) he would have a right to testify; and (6) the jury would be instructed on the law. See id. at 15-16. Finally, the district court asked Posadas-Aguilera again if he wanted to represent himself, to which Posadas-Aguilera replied, "I already said it . . . Well, I prefer to obey God before man." Id. at 18-19. The court then found that Posadas-Aguilera

> has demonstrated a knowing and voluntary waiver of his right to counsel under the Sixth Amendment. He acknowledges the disadvantages and risks attendant to self-representation. The court has advised him that it is a mistake to represent himself. He understands he will be required to follow the law and procedure during the course of the trial.
>
> I will, therefore, grant his request to represent himself. I will appoint Ms. Guzman as stand-by counsel, notwithstanding the defendant's rejection of that, and simply ask and direct that she be available in the event the defendant has a question concerning law and procedure.

Id. at 19.

On that same day, the jury was selected. See R13. Posadas-Aguilera did not challenge any of the jurors during jury selection. See id. at 50-55. Prior to concluding the proceedings, the district court asked Posadas-Aguilera if he would have any witnesses at trial. Posadas-Aguilera responded, "No, my – the witness I have is God." Id. at 57.

7

Two days later, Posadas-Aguilera's trial began.  See R14.  Posadas-Aguilera did not present an opening statement.  See id. at 3.  The government called four witnesses and Posadas-Aguilera conducted a limited cross-examination of three of them.  See id. at 32-34, 47, 63-64.  Posadas-Aguilera did not put on any evidence and did not make a closing argument.[4]  See id. at 77, 84.  After deliberating for about half an hour, the jury returned a guilty verdict against Posadas-Aguilera.  See id. at 98.

The Presentence Investigation Report ("PSI") assigned Posadas-Aguilera a base offense level of 8, pursuant to U.S.S.G. §2L1.2(a) (Nov. 2007).  Because Posadas-Aguilera previously had been convicted of an aggravated felony, an eight-level increase was assigned pursuant to §2L1.2(b)(1)(C).  This resulted in a total offense level of 16.  A subtotal of 9 criminal history points were added on account of Posadas-Aguilera's previous convictions for, among others, burglary of a building with intent to commit theft, battery, petty theft, battery of a law enforcement officer, and aggravated battery (great bodily harm or deadly weapon).  Because Posadas-Aguilera was on probation and the current offense was

_____

[4] Posadas-Aguilera's closing argument was limited to the following:  "Thank you for coming. I have never been in front of a – in a court like this.  This is the first time in my life.  I'm 39.  And I feel happy. And may God bless you and thank you for coming."  Id. at 84.

committed less than two years after being released from custody, 3 additional criminal history points were assigned to Posadas-Aguilera, resulting in 12 total criminal history points and a criminal history category of V. The PSI also reflected two other incidents of aggravated battery with great bodily harm that resulted in arrests (but not convictions), one involving Posadas-Aguilera beating a victim with a board and the other involving Posadas-Aguilera beating a victim with a piece of pipe. The maximum term of imprisonment for illegal reentry after conviction of an aggravated felony is twenty years. See 8 U.S.C. § 1326(b)(2). Based on a total offense level of 16 and a criminal history category of V, the guideline imprisonment range was forty-one to fifty-one months of imprisonment. See U.S.S.G. Ch.5, Pt.A.

At sentencing, Posadas-Aguilera indicated that he had not reviewed the PSI and declined the district court's offer to allow him to review the report before the sentencing hearing commenced. See R15 at 3-6. The court explained that Posadas-Aguilera had a right to an attorney, to which Posadas-Aguilera responded that he understood but he did not need an attorney. See id. at 7. The court then instructed the interpreter to translate the PSI from English to Spanish and review it with Posadas-Aguilera. See id. at 8. Off the record, the interpreter translated and read aloud the first seven pages of the PSI, at which point Posadas-Aguilera

9

suggested that the interpreter quit reading. See id. at 9. The interpreter also read paragraph 51 concerning the guideline provisions and the range of imprisonment. Posadas-Aguilera objected that the charges and convictions were all lies. See id.

When asked if he had any objections to the convictions listed in the pre-sentence report, Posadas-Aguilera responded, "Yes. Some are truth, others are sheer lies." Id. at 10. The court then walked through each scorable conviction. See id. at 10-14. Posadas-Aguilera objected to only his conviction for burglary of a building, stating, "If you – that's your law. If you prove everything that you say, so then judge me." Id. at 11. When the government mentioned the incident in which Posadas-Aguilera was charged with hitting a victim in the stomach with a baseball bat, Posadas-Aguilera objected that he never hit that person and only pled guilty so that he could be released from prison in order to raise money for his sick sister. See id. at 16.

The court concluded that Posadas-Aguilera had a total offense level of 16 and a criminal history category of V, which produced a guideline range of forty-one to fifty-one months of imprisonment. See id. at 23. The court then discussed Posadas-Aguilera's criminal history category, including his seventeen arrests. See id. at 24. The court specifically noted Posadas-Aguilera's three violent felony convictions and his two arrests for violent felonies that did not result in

convictions.  See id.  The court then noted that Posadas-Aguilera had not shown any remorse for being in the country illegally nor had he accepted responsibility for his previous offenses.  See id.  The court found that Posadas-Aguilera "should not be in this country" and was "a danger to the community."  Id.  The court concluded that "a long period of incarceration [was] appropriate to protect the public because [Posadas-Aguilera] undoubtedly will continue to commit serious offenses, including violent felonies."  Id.

Under U.S.S.G. § 4A1.3, the court imposed an upward departure from criminal history category V to VI, which increased Posadas-Aguilera's guideline range to forty-six to fifty-seven months of imprisonment.  See id. at 25. The court then listed the § 3553(a) factors it was considering, but found that a within-guideline range sentence "would be less than what is necessary to protect the public."  Id. at 26.  In rendering sentence, the court reasoned:

> It's unfortunate that a man is so insistent on self-destruction.  He has been communicable.  He understands these proceedings. He's knowingly and voluntarily waived his right to counsel, not only during the course of the trial but [during] these sentencing proceedings.  He's attempting to manipulate the system, and nothing short of a very lengthy sentence is appropriate.
>
> The maximum sentence in this case is 20 years. It's not necessary that I impose the maximum sentence. It is necessary, however, that I impose a sentence that will keep him in custody sufficiently long that he will

11

appreciate freedom more than he does.

> He has been to prison before. It made no difference. He has been deported twice. It made no difference.

Id. at 27. The court then sentenced Posadas-Aguilera to 120 months of imprisonment. See id.

## II. DISCUSSION

On appeal, Posadas-Aguilera raises two issues. First, he asserts that the district court, by permitting him to proceed pro se at trial and at sentencing, violated his rights under the Fifth and Sixth Amendments. Second, he asserts that the 120-month sentence imposed by the court was procedurally and substantively unreasonable. We address these arguments in turn.

A. Decision to Permit Posadas-Aguilera to Proceed Pro Se

Posadas-Aguilera argues that his Fifth and Sixth Amendment rights were violated when the district court permitted him to proceed pro se at trial and at sentencing, even though he was incompetent to waive counsel and represent himself. Specifically, Posadas-Aguilera contends that his incompetency to represent himself was apparent to his attorney and the magistrate judge, and was well-reflected in the record. Based on his actions at trial, Posadas-Aguilera also contends it was error for the district court to allow him to continue to represent

12

himself.

"A district court's conclusion that a defendant's waiver is valid – that it is knowing, voluntary, and intelligent – is a mixed question of law and fact that we review de novo." See United States v. Kimball, 291 F.3d 726, 730 (11th Cir. 2002) (per curiam). On direct appeal, the Government bears the burden of proving the waiver was valid. See United States v. Garey, 540 F.3d 1253, 1268 (11th Cir. 2008) (en banc).

Under the Sixth Amendment, all criminal defendants are entitled to the assistance of counsel. See U.S. Const. amend. VI. "A defendant may waive his right to counsel and represent himself so long as his choice to do so is made voluntarily and knowingly, with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." See Jones v. Walker, 540 F.3d 1277, 1287–88 (11th Cir. 2008) (en banc) (quotation marks, citation, and footnote omitted). Before a court concludes that a defendant has knowingly waived his right to counsel, the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." Faretta, 422 U.S. at 835, 95 S. Ct. at 2541 (quotation marks and citation omitted). "[T]he Constitution permits judges to take realistic account of the particular defendant's

mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so."[5] Indiana v. Edwards, 554 U.S. __, 128 S. Ct. 2379, 2387–88 (2008). "So long as the trial court is assured the defendant (1) understands the choices before him, (2) knows the potential dangers of proceeding pro se, and (3) has rejected the lawyer to whom he is constitutionally entitled, the court may, in the exercise of its discretion, discharge counsel or . . . provide for counsel to remain in a standby capacity." Garey, 540 F.3d at 1267.

In this case, after conducting a Faretta colloquy, the district court exercised its discretion and determined that Posadas-Aguilera was competent to waive his right to counsel. The district court was best able to observe Posadas-Aguilera and, through its observation, determined that Posadas-Aguilera understood the choices before him, knew the potential dangers of proceeding pro se, and affirmatively rejected his federal public defender for his trial. The court repeatedly warned Posadas-Aguilera of the dangers and disadvantages of self-representation, and the

---

[5] In those cases in which a court finds a defendant to be suffering from a severe mental illness, Edwards appears to limit that defendant's right to self-representation and require counsel. See Edwards, 554 U.S. at __, 128 S. Ct. at 2388. Apart from those cases, however, we concur with our brethren on the Seventh Circuit and read Edwards to hold that "[t]he Constitution may . . . allow[] the trial judge to block [a defendant's] request to go it alone, but it certainly [doesn't] require it." United States v. Berry, 565 F.3d 385, 391 (7th Cir. 2009); see also United States v. Deshazer, 554 F.3d 1281, 1290 (10th Cir. 2009) ("[W]hile the district court was not compelled to find [the defendant] competent to waive his right to counsel simply because the court had found him competent to stand trial, it does not follow that the district court was absolutely prohibited from doing so.").

14

record establishes Posadas-Aguilera's choice was knowing, voluntary, and "made with eyes open." Faretta, 422 U.S. at 835, 95 S. Ct. at 2541. Moreover, Posadas-Aguilera did not show, and has not shown, that he suffered from a significant mental illness to such an extent that his choice must not be considered intelligent.

Accordingly, we conclude that the district court did not violate Posadas-Aguilera's Sixth Amendment right by permitting him to proceed pro se at trial and at sentencing.

B. Reasonableness of Posadas-Aguilera's Sentence

Posadas-Aguilera also contends that his 120-month sentence is both procedurally unreasonable, as it was imposed in the absence of counsel, and substantively unreasonable, in that it was greater than necessary to achieve the goals of sentencing. We review all sentences imposed by a district court "under a deferential abuse-of-discretion standard." United States v. Pugh, 515 F.3d 1179, 1189 (11th Cir. 2008) (quotation marks and citation omitted). This review involves a two-step inquiry. See id. at 1190. First, we look at whether the sentence is procedurally reasonable by making sure that there were "no significant procedural error[s]" committed by the district court, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on

15

clearly erroneous facts, or failing to adequately explain the chosen sentence —

including an explanation for any deviation from the Guidelines range." Id.

(quotation marks and citation omitted). As part of this analysis, we must ensure

that the district court has provided sufficient explanation for any decision to depart

or vary from the guidelines range and that "the justification is sufficiently

compelling to support the degree of the variance." Id. (quotation marks and

citation omitted).

If we find the district court's decision to be procedurally reasonable, we then

review the substantive reasonableness of the sentence. See id. We conduct this

evaluation by taking into account "the totality of the circumstances, including the

extent of any variance from the Guidelines range." Id. (quotation marks and

citation omitted). Sentences outside the guidelines range are not presumed to be

unreasonable. See id. Nevertheless, we may consider the degree to which the

sentence is outside the guidelines, assuming we also "give due deference to the

district court's decision that the § 3553(a) factors, on a whole, justify the extent of

the variance." Id. (quotation marks and citation omitted). The district court must

evaluate all of the § 3553(a) factors when arriving at a sentence. See id. at 1191.

Though a court is permitted to "attach[] great weight" to one factor over others, an

"unjustified reliance" on that factor could be unreasonable depending on the

16

totality of the circumstances.  Id. at 1191–92 (quotation marks and citation omitted).  Among the factors listed in § 3553(a) are the need to reflect the seriousness of the offense, to promote respect for the law, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.  See 18 U.S.C. § 3553(a).

"[T]here is a range of reasonable sentences from which the district court may choose," and "the party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both th[e] record and the factors in section 3553(a)."  United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam).  We may vacate a sentence because of the variance only "if we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  Pugh, 515 F.3d at 1191 (quotation marks and citation omitted).  However, that we "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal."  Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 597 (2007).

Posadas-Aguilera has not shown that his sentence is procedurally unreasonable.  Because Posadas-Aguilera had three scorable serious felonies, two

17

other arrests for violent felonies that the PSI did not factor into his criminal history category, and had returned illegally to the United States at least twice, it was reasonable for the district court to apply an upward departure pursuant to U.S.S.G. §4A1.3(a)(1) based upon its finding that Posadas-Aguilera's criminal history category under-represented the seriousness of his criminal history and the likelihood that he would commit other crimes in the future. See United States v. Castrillon-Gonzalez, 77 F.3d 403, 406-07 (11th Cir. 1996). Furthermore, we find that the district court properly calculated the guideline range, treated the Guidelines as advisory, considered the § 3553(a) factors, and adequately explained the chosen sentence.

Likewise, given the record evidence and the district court's explanation, we cannot say that Posadas-Aguilera's sentence is substantively unreasonable. Posadas-Aguilera's 120-month sentence is well below the twenty-year statutory maximum. See United States v. Sweeting, 437 F.3d 1105, 1107 (11th Cir. 2006) (per curiam) (noting that a prescribed sentence within the statutory maximum sentence for a given crime is one factor to consider when assessing the reasonableness of a district court's sentence). Moreover, during the sentencing hearing, the district court expressed its concern with Posadas-Aguilera's prior illegal entries and prior criminal history, including seventeen arrests, three violent

18

scorable felonies, and two arrests for violent felonies that did not result in convictions, all of which, in the district court's estimation, made Posadas-Aguilera a "danger to the community." R15 at 24. Consequently, we conclude that the 120-month sentence not unreasonable, in light of the totality of the circumstances and when viewed through the prism of the highly deferential abuse-of-discretion standard.

## III. CONCLUSION

Posadas-Aguilera appeals his conviction and sentence for illegal reentry after conviction of a felony. We find that the district court did not err by permitting Posadas-Aguilera to proceed pro se at trial and at sentencing and that the court's sentence was both procedurally and substantively reasonable. Accordingly, we AFFIRM his conviction and sentence.

**AFFIRMED.**