**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 5, 2015**

# In the Court of Appeals of Georgia

A14A2187. DUCKETT v. THE STATE.

MCMILLIAN, Judge.

Appellant Alaneua Duckett was arrested and charged with aggravated assault, making terroristic threats, simple battery, and criminal trespass following an incident at a hair salon. She represented herself at trial, and a jury found her not guilty of simple battery and guilty of the remaining charges. Duckett, who is now represented by counsel, appeals from the denial of her motion for new trial, arguing that the trial court erred by allowing her to represent herself without first determining if she was competent to do so and by failing to sua sponte investigate her competency during trial.

The evidence, construed to support the jury's verdict,[1] shows that the incident giving rise to the charges against Duckett occurred on Duckett's first day at work as a stylist at a hair salon owned by Lynn Dozier. Duckett arrived at work on time, but the other salon employee, Shaquera Joyner, was late arriving to open the salon and Duckett became upset. Joyner called Dozier to tell her that Duckett was upset, and Dozier told Joyner that she was on her way and that Joyner should ignore Duckett until she arrived.

By the time Dozier arrived, customers had come into the salon and both Duckett and Joyner were styling hair. Dozier came over to watch Duckett work and attempted to correct the technique Duckett was using to do a "weave." Duckett became upset, told Dozier she could look at the customer's hair after she finished, and took Dozier's hand and moved it out of the way.

The altercation between the women escalated, and at some point Duckett grabbed a pair of scissors and held them in a threatening manner. Duckett threw items around the shop, picked up a hot iron, or "stove," and began slinging it around,

---

[1] Although Duckett does not challenge the sufficiency of the evidence, we have independently examined the evidence presented at trial and find it more than sufficient to authorize Duckett's conviction of the charges for which she was found guilty under the standard of *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2

hitting the wall and a mirror, which broke. Duckett verbally threatened Dozier, telling her that she was going to "whip [her] ass" and words to similar effect.

Joyner called 911, and Officer Timothy Roessel responded to the call. Officer Roessel testified that when he arrived, several women were yelling at each other, and that he could not immediately discern which of the women was the "suspect." He said that several of the women started pointing at Duckett, and he placed her under arrest.

At some point after she was arraigned and her case had been placed on a trial calendar, Duckett informed the prosecuting attorney's office that she wished to represent herself and called and demanded a jury trial. The prosecuting attorney brought the matter to the trial court's attention, and the trial court proceeded to hold a *Faretta* hearing to advise Duckett of her rights as required by State and federal law. See, e.g., *Faretta v. California*, 422 U.S. 806 (V) (95 SCt 2525, 45 LE2d 562) (1975); *Lamar v. State*, 278 Ga. 150, 152 (1) (b) (598 SE2d 488) (2004); *Clarke v. Zant*, 247 Ga. 194, 196 (275 SE2d 49) (1981). The transcript from the hearing shows that the trial court properly advised Duckett of the charges against her, the punishments she was possibly facing, her right to appointed counsel, and repeatedly warned her of the hazards of proceeding pro se, citing specific examples of how an attorney could better advocate on her behalf and protect her rights. Despite these admonitions and

3

warnings, Duckett continued to insist that she wanted to represent herself, making statements to the effect that it was unnecessary for her to have counsel because the charges against her were fabricated and frivolous. The trial court again cautioned Duckett, "Do you know how many people have been found guilty of things that they say never happened," but Duckett continued to insist that the State did not have a case against her. The trial court persisted in its efforts to persuade Duckett she needed counsel, but Duckett expressed her confidence that the trial court would ensure that the law was followed and that correct legal rulings would be made. She again reiterated that she did not need a lawyer and that she did not want a lawyer even if the court offered her appointed counsel.

At that point in the hearing, the trial court briefly questioned Duckett about her education, and she explained that she was a two-year college graduate, but that her credits continued to roll over and that had not yet met all the requirements to reach her goal of becoming a phlebotomist. Following this exchange, the trial court asked Duckett if she was "absolutely sure" that she wanted to represent herself if the case went to trial the following week, and she responded that she was sure and that she thought they should proceed.

The trial court allowed Duckett to proceed pro se at trial, and she was ultimately convicted of all the charges against her except simple battery. At the sentencing hearing, Duckett revealed for the first time that she suffers from schizophrenia, is bipolar, and has been receiving disability benefits for 13 years. The trial court questioned Duckett concerning her mental illness, and then noted on the record, among other observations, that

> from beginning, middle to end of these proceedings, [Duckett] presented herself as someone who obviously suffered from mental illness, which explains the attitude she took toward the Court, and to the other parties in this case, and her single-minded approach of refusing assistance of counsel, and refusing imprecations of the Court to do certain things for her own benefit. [And] I think a lot of both your behavior during the legal process, and your behavior at the hair salon, was due to your mental illness.

The trial court also stated that due to Duckett's circumstances it was showing her "a significant degree of mercy" by rejecting the State's recommendation and sentencing Duckett under the First Offender Act to five years, to serve 60 days minus time already served, with the remainder to be served on probation. Further, the court required Duckett to receive mental health treatment as directed by her probation officer.

5

The trial court also advised Duckett of the steps she should follow to obtain appointed counsel to pursue an appeal, and the court appointed counsel to represent Duckett in post-trial matters several weeks later. Appointed counsel filed a motion for new trial on July 2013, asserting the general grounds, with a reservation to amend the motion after counsel had the opportunity to review the trial transcript. However, counsel did not amend the motion after she reviewed the transcript, choosing instead to notify the trial court that she had "determined that no possible appellate issues in this case require an evidentiary hearing and that any ground in her appeal will be covered by the general grounds cited in her Motion for New Trial."

Despite counsel's entreaty to summarily deny the motion, the trial court entered a detailed order, finding, among other things, that his review of the record did not disclose that he had committed error by upholding Duckett's right to self-representation or by failing to sua sponte halt the trial and sentencing when it became apparent that Duckett had mental health issues. Citing *Indiana v. Edwards*, 554 U.S. 164 (128 SCt 2379, 171 LE2d 345) (2008), the trial court found that although Duckett suffers from some degree of mental or emotional illness that affects her conduct, her illness was not so severe that she could not conduct the trial proceedings by herself. Duckett now appeals from the denial of her motion for new trial.

1. In related enumerations of error, Duckett asserts that the trial court should have made a finding regarding her competency before allowing Duckett to represent herself at trial and further that the trial court erred when it failed to sua sponte investigate her competency after it allegedly became apparent that she suffered from a mental illness.

"It is impermissible as a matter of constitutional law for a mentally incompetent person to be subjected to trial, regardless of whether that person is tried while represented by counsel or while acting pro se." *Lamar v. State*, 278 Ga. 150, 151 (598 SE2d 488) (2004). A trial court has the duty to inquire into a defendant's competence "when information becomes known to it, prior to or at the time of the trial, sufficient to raise a bona fide doubt regarding the defendant's competence." (Citation omitted.) *Biggs v. State*, 281 Ga. 627, 629-630 (642 SE2d 74) (2007). Moreover, after conviction, a defendant may seek a hearing regarding the issue of competency at the time of trial. "In this regard, a defendant may argue that he was denied procedural due process based on the trial court's failure to resolve the issue of competency before or during trial or he may argue that his substantive due process rights were violated because he was tried while incompetent." Id. at 630.

Although Duckett does not clearly delineate her arguments as those involving procedural or substantive due process, it appears that she is asserting both violations in this case. With respect to whether Duckett's procedural due process rights were violated, the focus of that inquiry is "whether the trial court received information [prior to or during trial] which, objectively considered, should reasonably have raised a doubt about the defendant's competency and alerted the trial court to the possibility that the defendant could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense." *Traylor v. State*, 280 Ga. 400, 404 (627 SE2d 594) (2006). This information includes "any evidence of the defendant's irrational behavior, the defendant's demeanor at trial, and any prior medical opinion regarding the defendant's competence to stand trial." Id.

Duckett does not contend that the trial court had any direct information at the time of the advisement hearing concerning her mental capacity, but now argues that certain statements she made during the hearing should have alerted the trial court that it needed to make an additional inquiry into her competency. Among other things, Duckett points to a statement at the beginning of the hearing that she was "trying to make it through this," her repeated affirmations that she did not need a lawyer because the charges against her were baseless and false, and what she describes as

8

obviously nonsensical statements about her educational background, such as her assertion that she is a college graduate, but that her credits continue to "roll over." Further, Duckett contends that if the trial court had made the proper inquiry and questioned her prior to allowing her to proceed pro se, the court would have discovered that she suffers from a mental illness, as she revealed to the court at the sentencing hearing.

But the statements Duckett points to as proof of her incompetency were, when read in context, either appropriate, innocuous, or simply indicative of an intransigent belief in her innocence, which, as the trial court noted, while misguided, is not uncommon. Thus, while it is obvious that the trial court had some justifiable concerns about Duckett's ability to proceed without counsel, we do not believe that the particular circumstances here show that Duckett is entitled to a new trial due to the trial court's failure to conduct a competency hearing prior to allowing Duckett to represent herself at trial.

Duckett also argues that even if her conduct during the advisement of rights hearing did not alert the trial court to the need to conduct a competency hearing, her

9

conduct throughout the trial[2] should have alerted the trial judge to the need to halt the trial and conduct a sua sponte investigation into her competency. In addition, Duckett points to the trial court's remarks at the sentencing hearing, which she argues demonstrates that the court was aware she was mentally ill and incapable of conducting her own defense.

But the fact that the trial court became aware during the trial that Duckett suffered from some degree of mental instability does not necessarily mean that the trial court should have stopped the trial and overridden Duckett's decision to conduct her own defense. Likewise, the trial court was not required to stop the trial just because it became apparent that Duckett may have benefitted from counsel.

As noted above, the trial court made a specific finding in its order denying Duckett's motion for new trial that Duckett's mental illness was not so severe that she should be denied her right to represent herself. In support of its ruling, the trial court noted that Duckett was acquitted of the charge of simple battery, raised reasonable

_____

[2] Duckett argues that she was obviously confused about how to conduct voir dire and that during the trial she made no objections, interjected irrelevant and sometimes damaging information through her cross-examination of the witnesses, introduced two witness statements that corroborated the State's version of events, and gave the jury negative information about herself.

points in her defense, presented an alternative explanation for the incident,[3] and succeeded in admitting numerous items of evidence over the State's objection. These findings are supported by our review of the trial transcript. The fact that Duckett took some missteps at trial and remained intransigent in her defense did not require the trial court to halt the trial and inquire into her mental state or to sua sponte conclude that Duckett was not mentally competent to represent herself. *Haygood v. State*, 289 Ga. App. 187, 190 (1) (656 SE2d 541) (2008) (trial court not required to inquire into defendant's competency when alleged irrational behavior or demeanor was not such to alert the trial court that defendant was incompetent and court had no evidence of any prior medical opinion indicative of incompetency); *Traylor v. State*, 280 Ga. at 404-405 (4) (a) (although trial court knew that defendant was developmentally disabled and that he had some difficulty in responding to the court's question, court was not required to conduct competency hearing when defendant's behavior not irrational or demeanor unusual). Accordingly, this contention presents no grounds for reversal.

---

[3] Although not crystal clear, it appears that Duckett's defense was that Dozier hired her with the intent of either not paying her or taking advantage of her in some way.

2. With respect to Duckett's claim that she was, in fact, not competent to represent herself at trial, resulting in a violation of her substantive due process rights, she asserts that the trial court erred in finding post-trial that "although [Duckett] suffers from a mental or emotional illness that affects her conduct, it was not so severe that this court should have overrode her wish to represent herself." This finding necessarily carries with it a determination that Duckett was competent to stand trial. And as held by the United States Supreme Court in *Godinez v. Moran*, 509 U.S. 389 (113 SCt 2680, 125 LE2d 321) (1993), and reiterated by our Supreme Court, "[t]he standard of mental competency to stand trial is the same as the standard of mental competency to waive the right to counsel." *Lamar*, 278 Ga. at 151.

"When . . . the factfinder has made a determination of competency, the appropriate standard of appellate review is whether after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was incompetent to stand trial." *Biggs*, 281 Ga. at 630. Construing the evidence in the light most favorable to the State and given that Duckett, through counsel, declined to present any additional evidence at the motion for new trial stage, including any medical

12

evidence of incompetency, we conclude that the trial court was authorized to find that Duckett was competent to stand trial and to represent herself at trial.

Relying on the United States Supreme Court's decision in *Edwards*, Duckett contends that the trial court failed to properly evaluate and weigh her mental incapacity in allowing her to waive her constitutional right to counsel and proceed pro se at trial.[4] Duckett is correct that an accused who is competent to stand trial and insists on representing herself may nonetheless be required to accept the services of counsel on the ground that she lacks the mental capacity to conduct her own defense at trial. *Edwards*, 554 U.S. at 177-178. See also *Sheppard v. State*, 297 Ga. App. 806, 809 (1) (678 SE2d 509) (2009) (applying *Edwards*). As the Court in *Edwards* explained:

> We consequently conclude that the [U.S.] Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so.

*Edwards*, 554 U.S. at 177-178.

---

[4] Duckett only challenges the trial court's finding that she had the mental competency to waive counsel and does not assert on appeal that the trial court otherwise failed to properly advise of the "dangers and disadvantages" in representing herself under *Faretta*.

13

But *Edwards* does not, as Duckett argues, impose a higher level of scrutiny of an accused's competence to self-represent at trial or create any additional duty on the part of the trial judge to inquire into an accused's competence. Instead, *Edwards* holds that it is constitutionally permissible for a state to deny a defendant the right to proceed without counsel at trial on the grounds that the defendant, though competent to stand trial, is not sufficiently competent to represent herself at trial because of a severe mental illness.[5] In so holding, the *Edwards* Court emphasized that "the trial

_____

[5] We note that federal courts that have considered this issue agree that *Edwards* does not impose a higher standard for evaluating competence to self-represent at trial as a matter of federal constitutional law. See e.g., *Wright v. Bowersox*, 720 F3d 979, 986 (8th Cir. 2013) ("*Edwards* did not announce a new constitutional rule for determining competency when a defendant wishes to waive his right to counsel; it merely allows, but does not require, states to have a heightened standard."); *United States v. Bernard*, 708 F3d 583, 590 (4th Cir. 2013) ("To the extent Appellant suggests the district court was constitutionally compelled to deny him the right, *Edwards* announces no such rule."); *United States v. Turner*, 644 F3d 713, 724 (8th Cir. 2011) ("*Edwards* does not require that a trial judge: (1) conduct an inquiry into the competency of every defendant who requests to proceed pro se, or (2) hold a hearing prior to making a competency determination."); *United States v. Johnson*, 610 F3d 1138, 1145 (9th Cir. 2010) (*Edwards* does not answer the question of "when, if ever, the Constitution *requires* a court to impose counsel on a 'gray area' defendant despite a voluntary and knowing waiver"); *United States v. Deshazer*, 554 F3d 1281, 1289-90 (10th Cir. 2009) ("To the extent that [defendant] suggests that the district court was duty-bound to deny him the right [to waive counsel], we do not read *Edwards* as announcing such a new rule."); *United States v. Posadas-Aguilera*, 336 Fed. Appx. 970, n.5 (11th Cir. 2009) (agreeing with Seventh Circuit that although the Constitution allows a trial judge to "block [a defendant's] request to go it alone, but it certainly [doesn't] require it"). See generally *Sheppard v. Kemp*, No. CV413-274,

14

judge . . . will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." Id. at 177. Accordingly, under *Edwards*, we discern no error in the trial court's determination that although Duckett apparently suffered from a mental illness, it was not so severe that the trial court should override her desire to self-represent at trial. See *Sheppard v. State*, 297 Ga. App. at 809 (1).

*Judgment affirmed. Phipps, C. J., and Ellington, P. J., concur.*

---

2014 WL 7034594, at *3 (S.D. Ga. 2014) (citing federal appellate and district court cases).