**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 28, 2019**

# In the Court of Appeals of Georgia

A19A0459. BEACH v. THE STATE.                    DO-015 C

DOYLE, Presiding Judge.

After a jury trial, Lance Beach, who represented himself at trial, was convicted of one count of child molestation.[1] After the trial court denied Beach's amended motion for a new trial filed through counsel, Beach filed this appeal, also with the assistance of counsel. Beach argues that the trial court erred (1) by failing to re-evaluate his competency to stand trial; and (2) by permitting the admission of evidence of a prior bad act after ruling that the evidence was inadmissible . For the reasons that follow, we affirm the judgment in part, reverse in part, and remand the case for a hearing on Beach's competency at the time of trial pursuant to OCGA § 17-7-130 (d).

---

[1] OCGA § 16-6-4 (a) (1).

Viewed in favor of the verdict,[2] the record shows that Beach is the great-uncle of L. F., who was 12 years old at the time of the incident. L. F. lived with her mother and her grandfather in a two-bedroom apartment; her grandfather normally slept in L. F.'s bedroom, and she slept on a couch in the living room. Beach had been living in the apartment with them for a few months, and he slept on the other couch.

On the night of October 21, 2012, L. F. was watching television in the living room with Beach while her mother was asleep. At some point, Beach turned off the television, moved over to L. F.'s couch, and touched her breasts and buttocks with his hands over her clothes but underneath a blanket that covered her. Beach also attempted to force his hands between L. F.'s tightly closed legs to touch her vagina.

After Beach ceased touching her, L. F. got up and went to the bathroom and then to her bedroom to sleep. She also sent a text to her mother at 12:44 a.m., making an outcry of molestation, stating that "Uncle Lance touched me in inappropriate places last night. That's why when y[o]u wake me up [I'm going to] be in my bed." The text message also included a frowning emoji face with a tear. L. F.'s mother read the text message when she awoke at approximately 4:00 a.m., immediately woke L. F., who told her mother about the incident. The mother testified that L. F. acted scared

---

[2] See *Enloe v. State*, 252 Ga. App. 666 (556 SE2d 873) (2001).

and cried; L. F.'s aunt also testified that L. F. made an identical outcry to her, acting upset and crying.

The mother confronted Beach, who neither admitted nor denied the molestation, and thereafter, the mother kicked him out of the apartment and called police. A sexual assault exam was performed on the victim, and the sexual assault nurse testified that the exam revealed no injuries, which was consistent with the type of molestation alleged to have occurred by L. F. At the conclusion of trial, the jury found Beach guilty, and after the trial court denied his amended motion for new trial (at which time Beach was represented by counsel), this appeal followed.

1. Although Beach does not argue on appeal that the evidence was insufficient to support the verdict, we note that the evidence as presented meets the requirements set forth in *Jackson v. Virginia*.[3]

2. Beach argues that the trial court erred by failing to properly assess his competence to stand trial.

---

[3] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See *Dew v. State*, 292 Ga. App. 631, 633 (1) (b) (665 SE2d 715) (2008) (holding that testimony that the defendant touched victim's vaginal area was sufficient and that "a conviction for child molestation does not require a showing that the victim was touched beneath her clothing") (punctuation omitted). See also OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact. . . .").

(a) *Factual background*. On October 1, 2013, the trial court ordered a mental evaluation regarding Beach's competency to stand trial, including whether he was capable of distinguishing right from wrong or whether he was suffering from a delusional compulsion. On June 24, 2014, the trial court held a status hearing on the case, at which time Beach stated that he wished to represent himself. While engaging in a *Faretta*[4] hearing, the trial court again expressed its worry about some of the statements Beach was making and inquired whether he had been in any sort of mental health counseling.[5] Beach stated that he did not need any counseling, and was only taking blood pressure medication; Beach then complained that jailors were tampering with his food by adding medications. During the hearing, the public defender explained that Beach refused to meet with her, and it was revealed that Beach had had a mental health evaluation in March 2014. The hearing concluded with a notation from the court that "Beach also had an outburst in court that made no . . . sense . . . ."

---

[4] *Faretta v. California*, 422 U. S. 806 (95 SCt 2525, 45 LE2d 562) (1975). See Ga. Const. of 1983, Art. I, Sec. I, Par. XII.

[5] The court noted that the *Faretta* waiver document had multiple yes or no questions, but Beach had failed to answer any of them and simply signed his name.

4

On October 23, 2014, the trial court again held a status conference with Beach, at which he made accusations against the public defender: "she has been forcing her representation on me. She also has been interfering and tampering with my mail. And as of June 24, I'm sure that treason was established by her following my mail constantly." Thereafter, the trial court entered an order directing 90 days of observation of Beach by the Department of Behavioral Health and Developmental Disabilities ("DBHDD") and the Department of Human Resources ("DHR") to determine his competency.

On January 9, 2015, the trial court entered an order directing the public defender's office to represent Beach because a psychiatrist at Georgia Regional Hospital had opined that Beach was incompetent and could therefore not waive his right to counsel; the court, however, did not actually find that Beach was incompetent but rather that his "competency is in question."

On February 18, 2015, the court conducted a hearing to determine whether Beach was competent to stand trial and on whether to forcibly medicate Beach pursuant to *Sell v. United States*.[6] At the hearing, psychiatrists testified that Beach was diagnosed with schizophrenia, and he was offered antipsychotic medication for

---

[6] 539 U. S. 166 (123 SCt 2174, 156 LE2d 197) (2003).

the disorder. Beach "had some difficulties with his ability to assist his attorney, given that he [had] paranoid delusions, meaning that the thoughts that he had were not based in reality and were paranoid in nature. And [he] also had significant disorganized thought process, which limited his ability to effectively assist his attorney."

On February 20, 2015, nunc pro tunc to February 18, 2015, the trial court found Beach incompetent to stand trial and directed DHR to reevaluate him in 90 days. On February 20, 2015, the trial court also entered an order directing the DBHDD to forcibly administer the psychotropic medications necessary to restore Beach's competency.

The record contains production orders for status conferences during 2015, but no hearing transcript appears in the record for those dates. The next hearing occurred on March 14, 2016, with a new judge presiding and conducting a second *Faretta* hearing. At the hearing, in response to the judge's question as to whether Beach had "ever been under the care of a psychiatrist, psychologist, or other mental health professional," Beach responded "no." The defense attorney interjected at this point:

Defense Counsel: Your honor, he is currently located at Georgia Regional[,] and so he needs to understand that you are also talking about what his current care is now.

The Court: Well[,] I just asked if he's under the care of any psychiatrist, psychologist, or other mental health professional[,] and you said no. Do you want to change your answer?

Beach: Yes.

The Court: Okay. Tell me about that?

Beach: I'm at Georgia Regional right now under Dr. Fear.

The Court: What is Dr. Fear doing for you?

Beach: She's a psychiatrist.

The Court: Tell me a little bit more about that.

Beach: Well[,] she's treating me for anxiety, it's going along pretty good. . . . She's treating me [for] anxiety. I take Zyprexa[,] and I take Clonapam. . . .

The Court: How do you feel about the state of your treatment?

Beach: Everything's fine. A lot calmer.

Thereafter, the trial court continued its inquiry into whether Beach was knowingly and voluntarily waiving his right to counsel, and the court granted his request to waive counsel.

On May 9, 2016, the trial court entered a nunc pro tunc order to June 19, 2015, finding that Beach was competent to stand trial based on a report from that date from Georgia Regional, presumably stating that Beach's competency had been restored. That same day, the court began the trial against Beach, appointing the public defender to act as stand-by counsel and assist only with procedural advice. After a brief recess, the trial court inquired of the public defender, "Ma'am, after speaking with Mr. Beach this morning, any concerns about his competency?" to which counsel responded that she thought he was competent. The court conducted a third *Faretta* hearing, asking, among other questions, whether Beach had "been under the care of a psychiatrist, psychologist, or other mental health professional," to which Beach responded, "No. no other time than Georgia Regional." The court asked if Beach had taken medication or drugs in the preceding 24 hours, and he responded that he took his medicine; and then he raised the issue of food-tampering again — "the last three years that's been quite overwhelming. There's been medications and things put in my food."

The court concluded its *Faretta* hearing, again finding that Beach had knowingly and voluntarily waived counsel, and the State interjected that "Mr. Beach indicated that medication was being put in his food. I'm not sure that's how they are administering his medications, so that may raise a concern. If we could have a recess to speak with the doctor briefly." The court had a recess, and the public defender reported that a doctor from Georgia Regional had spoken with Beach, and the doctor told the public defender Beach was "ready to proceed."

(b) *Analysis*. Beach argues on appeal that the trial court should have inquired into his competency immediately before trial, and the court's action of entering a nunc pro tunc order finding Beach competent based on a one-year-old evaluation was insufficient. We agree that in this case, based on the February 20 finding of incompetency, the trial court failed to follow the requisite procedure set forth in OCGA § 17-7-130 to later find Beach competent.

Pursuant to OCGA § 17-7-129 (a),

[w]hen information becomes known to the court sufficient to raise a bona fide doubt regarding the accused's mental competency to stand trial, the court has a duty, sua sponte, to inquire into the accused's mental competency to stand trial. The court may order the [DBHDD] to conduct an evaluation of the accused's competency. If the court determines that it is necessary to have a trial on the issue of competency,

9

*the court shall follow the procedures set forth in Code Section 17-7-130.
. . .* [7]

In this case, the trial court properly followed this procedure when it ordered

Beach into the custody of DBHDD, DHR, and Georgia Regional for a determination

of competency. Additionally, the trial court held a hearing after receiving the first

evaluation of Beach, at which hearing treating physicians testified as to Beach's

mental state, declared him incompetent to stand trial, and ordered a future evaluation

after he was forcibly medicated. This was proper according to the procedure set forth

in OCGA § 17-7-130 (c).

Nevertheless, after the DBHDD evaluation holding that Beach was competent

after receiving treatment, the trial court failed to follow the procedure set forth in

OCGA § 17-7-130 (d), which states that if, after treatment and evaluation of the

accused under OCGA § 17-7-130 (c), the DBHDD finds that the accused is competent

to stand trial, "the court *shall hold a bench trial to determine the accused's mental*

*competency to stand trial within 45 days of receiving the [DBHDD's] evaluation* or,

---

[7] (Emphasis supplied.) We note that the Georgia Supreme Court determined that OCGA § 17-7-130 (c) is unconstitutional as applied to certain classes of defendants, which is not an issue applicable to this case. See *Carr v. State*, 303 Ga. 853, 869 (5) (b) (815 SE2d 903) (2018).

if demanded, shall conduct a special jury trial within six months of receiving the [DBHDD's] evaluation."[8] If the language of a statute is plain and unambiguous and does not lead to contradictory, absurd, or wholly impractical results, it is the sole evidence of legislative intent and must be applied according to its express terms.[9] We also must give each part of the statute meaning and avoid constructions that make some language mere surplusage.[10] Following these principles, our Court has held that the word "'[s]hall' is generally construed as a mandatory directive."[11]

In this case, after the court received the June 2015 evaluation stating Beach's competency was restored, the trial court briefly touched on Beach's competency at the second *Faretta* hearing, but failed to hold the bench trial on competency as required by OCGA § 17-7-130 (d) (1). Because the statutory procedures of OCGA § 17-7-130 were triggered by the trial court's entry of the October 2014 order directing his evaluation and February 2015 order to forcibly medicate him, the court was bound

---

[8] (Emphasis supplied.) OCGA § 17-7-130 (d) (1).

[9] See *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981).

[10] See *J. Kinson Cook, Inc. v. Weaver*, 252 Ga. App. 868, 870 (1) (556 SE2d 831) (2001).

[11] *Beach v. B. F. Saul Property Co.*, 303 Ga. App. 689, 695 n. 4 (694 SE2d 147) (2010).

11

to implement the remaining dictates of the statutory scheme.[12] This should have been completed by the court prior to conducting the second *Faretta* hearing or proceeding to trial.[13]

Beach argues that this requires a reversal of his conviction. But based on the Supreme Court's holding in *Baker v. State*,[14] we simply remand the case to the trial court to conduct the required procedure under OCGA § 17-7-130 (d) (1), but do not require a new trial on guilt or innocence at this time.[15] "The case is remanded with direction that the trial court conduct a hearing to determine the above issues. Upon completion of the proceedings on remand, the judgment may be subject to a right of appeal from the rulings and findings then made."[16]

---

[12] Compare with *Duckett v. State*, 331 Ga. App. 24, 30-31 (2) (769 SE2d 743) (2015); *Perkins v. State*, 328 Ga. App. 508, 511-512 (2) (759 SE2d 626) (2014). In those cases, there was not the history of application of the statutory procedures and prior finding of incompetence that existed in this case.

[13] Compare with *Lamar v. State*, 278 Ga. 150, 150-151 (1) (598 SE2d 488) (2004).

[14] 250 Ga. 187 (297 SE2d 9) (1982). *Baker* addressed a defendant's special plea of incompetency, but no such plea was necessary in this case based on the February 20, 2015 order finding Beach incompetent.

[15] See id. at 193 (1).

[16] Id.

3. Beach also argues that the trial court erred by admitting evidence of a prior bad act through the admission of a recording of his statement to the lead detective and the detective's testimony at the preliminary hearing. Beach argues that the trial court previously had ruled that evidence of the prior bad act was inadmissible, and the trial court committed plain error by not redacting references to the act from the defendant's interview with the detective and the detective's testimony prior to publishing them to the jury.

(a) *Background*. Prior to trial, the State attempted to admit the statement of R. C. (Beach's biological daughter born in 1984), who alleged that over the summer between her second and third grade year, she was lying on top of Beach while both were clothed, watching a movie, and drifting off to sleep. R. C. stated that Beach's penis became erect, and Beach ground it against her private area. She also stated that he frequently discussed sex inappropriately around her and her friends. The trial court denied the State's request to use the evidence.

During the preliminary hearing in January 2013, a detective testified about her interview of Beach, which testimony did not refer to the prior bad act; Beach considered her testimony perjury when compared to the substance of the interview. At trial, during his cross-examination of the detective, Beach attempted to impeach

the detective about her "perjury" at the preliminary hearing using his statement from the interview. Because Beach mentioned the interview, the State moved to admit it. The Court asked Beach whether he would like a curative instruction to the jury to disregard the mention of the interview, but Beach instead requested that it be admitted to trial as an exhibit. Additionally, the preliminary hearing was presented to the jury. Both of those recordings contained passing references to the prior bad act evidence that the trial court had ruled inadmissible. Beach did not ask the trial court to redact those references, and the trial court did not sua sponte instruct that the references be redacted.

(b) *Analysis*. Because Beach did not object to admission of the interview or the preliminary hearing testimony, and because he did not move for the trial court to redact references to the prior bad act evidence therefrom, we review this enumeration of error under the plain error standard.

The showing required to establish plain error by a trial court is great:

First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of

14

the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[17]

We agree that the third prong of this analysis is satisfied, and the admission of these two statements likely affected the outcome of the trial, given the lack of physical evidence or witnesses other than L. F. and Beach even though L. F. immediately reported the incident.[18] Nevertheless, Beach has not satisfied the first or second prongs of the analysis in order to establish plain error.

Beach contends that he did not intentionally relinquish his right to redact the excluded allegation from the two hearings, and he was not aware he had that right because he was acting pro se and suffers from mental illness. Nevertheless, Beach has not challenged the *Faretta* hearing, and assuming that the trial court properly determined that Beach's competency was restored and that he had knowingly and

---

[17] (Punctuation and emphasis omitted.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

[18] See *Dumas v. State*, 337 Ga. App. 124, 129-130 (1) (786 SE2d 508) (2016) ("the jury's determination necessitated weighing the credibility of the victim's testimony against [the defendant's] credibility").

15

voluntarily waived his right to an attorney, it was incumbent on Beach to become well versed in trial procedure to protect himself.[19]

Beach contends that because the trial court previously ruled that the prior bad act should be excluded because its prejudice outweighed its probative value, allowing this inadmissible evidence via the records of the interview and the detective's testimony at the preliminary hearing to be presented to the jury is plain error. But Beach specifically requested that the interviews be admitted, and out of the 80-minute interview, much of Beach's statements were his contentions that the grandfather was attempting to act inappropriately with L. F. In the statement, Beach told the detective that he and the mother had had an argument the week before because L. F. had confided in Beach that her grandfather was trying to get in the shower with her. Beach told the mother, and the mother became hostile toward him, making up the allegations against him, and that the night of the allegations, L. F. had been trying to move him off the couch, and they play fought over it. Thus, Beach has failed to

---

[19] See *Moss v. State*, 196 Ga. App. 81, 82 (1) (395 SE2d 363) (1990) ("When a criminal defendant elects to represent himself, either solely or in conjunction with representation or assistance by an attorney, he will not thereafter be heard to assert a claim of ineffective assistance of counsel with respect to any stage of the proceedings wherein he was counsel.") (punctuation omitted). See also *Duckett*, 331 Ga. App. at 24 (1).

establish plain error because it is reasonable that he made a calculated attempt to get his statements to the detective into evidence in order to discredit the mother and L. F.[20] Accordingly, this enumeration is without merit.

*Judgment affirmed in part, reversed in part, and case remanded with direction. Coomer and Markle, JJ., concur.*

---

[20] See *Adkins v. State*, 301 Ga. 153, 156 (2) (800 SE2d 341) (2017) ("Although we may take notice of plain errors affecting substantial rights even when an error is not brought to the attention of the trial court, [if] invited error exists, it precludes a court from invoking the plain error rule and reversing.") (citation and punctuation omitted). See also *Moss*, at 82 (1).